**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Marshall WOMACK, Defendant-Appellant.**

**No. 71-1090.**

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1972.

---

Clifford W. Brown, Brown & Harding, Lubbock, Tex., for defendant-appellant Marshall Womack.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., Ralph E. Harris, Asst.

U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Womack, Kenneth L. Musgrave, Jack Bryant, and Homer E. Koon, Jr. were charged in a seven-count indictment with violations of 18 U.S.C.A. §§ 371, 657 and 1006.[1] These alleged violations arose from two loans made to appellant and Koon by the Home Savings Association of Odessa, Texas. Before the case reached trial, appellant was severed from his codefendants because of ill health. In the first trial Koon was acquitted, and Bryant and Musgrave were found guilty on various counts. Subsequently appellant was tried and found guilty on five counts. After appellant's conviction, this Court decided the appeals of Musgrave and Bryant, United States v. Musgrave, 5th Cir. 1971, 444 F.2d 755. It found no substantial evidence to support the jury's verdict on any of the counts against Bryant and ordered him acquitted. The Court held further that errors by the trial court required that Musgrave's conviction be reversed and

---

1. 18 U.S.C.A. § 371 provides in pertinent part:

If two or more persons conspire either to commit any offense against the United States or, to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C.A. § 657 provides in pertinent part:

Whoever, being an officer, agent or employee of or connected in any capacity with . . . any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation . . ., embezzles, abstracts, purloins, or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $5,000 or imprisoned not more than five years, or both . . . . .

18 U.S.C.A. § 1006 provides in pertinent part:

Whoever, being an officer, agent or employee of or connected in any capacity with . . . any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation . . ., with intent to defraud any such institution . . ., makes any false entry in any book, report or statement of or to any such institution, or without being duly authorized, . . . issues, puts forth or assigns any note, debenture, bond or other obligation, or draft, bill of exchange, mortgage, judgment, or decree, or, with intent to defraud the United States or any agency thereof, or any corporation, institution, or association referred to in this section, participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such corporation, institution, or association, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

remanded for a new trial. Appellant was tried before the same district judge as his codefendants.

The transaction on which this prosecution is based is set out in detail in this Court's opinion in United States v. Musgrave, *supra*. We shall, therefore, summarize it very briefly. At a meeting with Musgrave, appellant agreed, *inter alia*, to purchase Musgrave's majority stock ownership in Home Savings Association of Odessa, Texas. Musgrave agreed to have the money for the purchase loaned to appellant and his nominee, Koon, by Home Savings. Appellant provided as collateral for the loans a building and a piece of land. The loans were approved by the board of directors of Home Savings and consummated. The problem with this business deal, the Government argues, is that the $1,460,000 loaned to appellant was secured by property valued at only $377,000, although the terms of the loan agreement called for security in *excess* of the amount of the loan. Moreover, Bryant, Musgrave's attorney, received a $30,000 legal fee for work on the loans and sale that did not appear particularly extensive. In short, the Government says Musgrave, Bryant, and appellant Womack sought to defraud the savings association by causing the loans to be made when they knew the collateral was grossly inadequate and that Musgrave's appraisals on the building and land were far in excess of their market value.

The indictment may be summarized as follows:

The first count charged Musgrave, Bryant, Womack, and Koon with conspiring to defraud the federally insured Association. The second count charged that Musgrave, aided and abetted by Womack, fraudulently prepared and submitted grossly inflated appraisal reports on real property securing the loans. The fourth count charged that Bryant, aided and abetted by Musgrave and Womack, unlawfully "participated" in the proceeds of the loans. The sixth count charged that Musgrave, as Chairman of the Board of the Association and aided and abetted by Womack and Bryant, fraudulently caused the Association to make the loans, knowing that they were not secured by sufficient collateral. The seventh count charged that Musgrave aided and abetted by Womack and Bryant, unlawfully shared in the loan proceeds. Counts three and five were dismissed.

United States v. Musgrave, 5th Cir. 1971, 444 F.2d 755, 758. Appellant was convicted on all counts not dismissed. The Government now concedes that count seven is fatally defective since it omitted an essential element of the offense charged, "intent to defraud." We agree that it is defective and therefore reverse the conviction under count seven and order that count dismissed. Honea v. United States, 5th Cir. 1965, 344 F.2d 798, 804. In addition to his point on count seven, appellant raises numerous other issues for review.

I.

On June 15, 1970 appellant filed an affidavit in the district court seeking disqualification of the trial judge. A month later he filed a supplemental affidavit. Both documents alleged the trial judge to be biased and prejudiced against appellant. The judge refused to disqualify himself.

28 U.S.C.A. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it

within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

In Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), the Court said that the filing of an affidavit of personal bias or prejudice of the judge who is to preside at the trial, conformably to 28 U.S.C.A. § 144, leaves the judge no duty other than to pass upon the legal sufficiency of the affidavit to show his objectionable inclination or disposition, and, if legally sufficient, compels his retirement from the case without passing upon the truth or falsity of the facts affirmed.

■ Because of the disruption and delay of the judicial processes that can be caused by the disqualification of a trial judge, affidavits of disqualification are strictly scrutinized for form, timeliness, and sufficiency. In the instant case, the form is not challenged, but the timeliness and sufficiency are. The Government urges that the affidavit was untimely because filed more than a year after appellant's plea of not guilty, eleven months after the trial judge first ruled on a series of appellant's pretrial motions, and two months after the transcript of the Musgrave trial, which provided the basis for the first affidavit, became a public record.

■ We do not agree that the first affidavit was untimely. Appellant had no reason to believe the trial judge would be biased against him until word reached his counsel through the legal grapevine of comments by the judge during the Musgrave trial. Counsel for appellant was under no duty to sit in on the Musgrave trial or read the transcript of that trial the day it became a public record. There is no indication in the record that once appellant learned of the judge's derogatory comments about him and obtained the Musgrave trial transcript he did not file his affidavit promptly.

■ We now turn to the sufficiency of the affidavits. The law on this question is extensive but we need not belabor its breadth or nuances to decide this case, in which the allegations of the affidavits are clearly sufficient. During the Musgrave trial the judge referred to appellant as a man "who everybody admits was certainly a shady character," and told the jury: "If you find that Musgrave did this there is no question but that Womack was working with him hand in glove . . . he would be as culpable."

The genesis of appellant's supplemental affidavit of disqualification was a June 15, 1970 pretrial conference. When appellant moved for a continuance because of his alleged ill health following a heart attack, the judge replied that appellant should have taken care of his health problems earlier and would go to trial even if he had to have a doctor in court to hold his hand. In response to appellant's motion for a change of venue to Fort Worth to put him closer to his heart specialist, the judge replied that appellant would be tried in Pecos because the judge had heard all the evidence in the Musgrave case, the Pecos jury had convicted Musgrave and Bryant, and the court was convinced appellant was guilty and would be so found by a Pecos jury. The judge said further that appellant could expect favorable treatment at his hands only if appellant saved the Government money in the trial of the cause. The motion for change of venue for convenience was denied.

Appellant's affidavits of disqualification setting forth these remarks of the trial judge were in proper form, timely, and legally sufficient. The judge erred in not withdrawing from the case.

## II.

Several of appellant's points on appeal are directed at the court's charge to the jury. Although we have decided this case must be reversed and tried by a different judge, we shall respond to these issues because of their importance and in hope of reducing the chance for error on retrial.

Appellant first contends that the court submitted a charge to the jury which was

prejudicial and argumentative and in effect constituted a directed verdict against him. In the opening portion of his charge, the trial judge said:

> This is a very serious case. It merits your very careful consideration which I am sure you will give to it just as you have this testimony. It involves the integrity of a savings and loan association, the operation of a savings and loan association and the dealings with a savings and loan association in which there are hundreds of thousands of people deposit their money, . . .
> [The record of the court's charge is replete with incomplete passages. We shall therefore dispense with the use of (sic) which would become burdensome].

*See* United States v. Musgrave, *supra*, 444 F.2d at 761. Later the court said:

> If you accept the testimony of the witnesses here and the inferences that the Government asked you to draw and that you may draw from the facts that have been proved undisputedly, the evidence is overwhelming as to the guilt of this defendant on every count.
>
> \* \* \* \* \* \*
>
> [I]t's almost inconceivable that a man in the position of this man would sit here and say that he did not know that he was doing anything, that they told him it was all right for him to buy a piece of property for $167,000 and contract to borrow $500,000 on it and then apply that amount to pay the purchase price. It's almost inconceivable, but that's up to you. As I said, you are the ones to draw these inferences from it because you are the exclusive judges and in fact you can turn a person loose that you felt was guilty if you wanted to . . . that is the exclusive province of the jury if you wanted to.
>
> \* \* \* \* \* \*
>
> [T]o attempt to deceive the Home Savings Association, to conceal the fact that Womack would be the recipient of loans in excess of which said Home Savings Association could legally expend to borrower, he nominated Koon

as the nominee to receive a loan of $500,000. There wasn't any undisputed evidence as he did that. No dispute about it.

■ The questions of whether a charge is argumentative and whether a verdict has been directed against the accused are, of course, separate issues. We deal with them together here simply because both questions are presented in several of the same passages from the court's charge. First, we have concluded that the charge exhibits a prosecutor's zeal on the part of the trial judge. United States v. Musgrave, *supra*, at 761. The court's statements that the case involved the "integrity" of a savings and loan association in which hundreds of thousands of people have their savings, that the Government had proved portions of its case "undisputedly," that the evidence of appellant's guilt was "overwhelming," that it was "inconceivable" that appellant did not know fraud was afoot, and that the jury could "turn loose" appellant even if he was guilty, when taken together, destroyed "[t]he cloak of impartiality which the judge should wear." United States v. Hill, 7th Cir. 1964, 332 F.2d 105, 106; *see* United States v. Musgrave, *supra*, 444 F.2d at 761.

In *Musgrave* this Court held the district judge erred in making argumentative statements to the jury, but noted that he had failed to instruct the jury that it was not bound by his comments. In the instant case the court did so instruct the jury, and the Government argues this difference distinguishes *Musgrave*.

It is well settled that a federal district judge is not relegated to complete silence and inaction during the course of a criminal jury trial. He must, however, be most careful that his interventions are proper, timely, made in a fair effort to clear unanswered issues, and are not prejudicial to defendant. Many federal decisions recognize the power of the judge, within reasonable limits, to comment on the evidence and to express fair opinions. This privilege, however, has been limited to the

point where the trial judge is under a strict duty to direct the jury clearly that they are the sole judges of the facts and are not bound by the judge's questions or comments. . . .

It is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge, the trial arbiter, and that some comments may be so highly prejudicial that even a strong admonition by the judge to the jury, that they are not bound by the judge's views, will not cure the error.

Bursten v. United States, 5th Cir. 1968, 395 F.2d 976, 982–983. The instant case fits the second paragraph of the quote from *Bursten* rather than the first; the comments of the trial judge were incurable.

In Roe v. United States, 5th Cir. 1961, 287 F.2d 435, 440 cert. denied, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29, this Court said:

> [N]o fact, not even an indisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict either in whole or in part.

In the case before us, various facts concerning the dealings between appellant, Musgrave, Bryant and Koon were at issue. More important, however, and more hotly contested at trial were the questions of appellant's knowledge and intent. If, for instance, appellant knew Musgrave's appraisals on the land and building appellant put up as security for the loan were drastically inflated [we are, of course, hypothesizing and express no opinion on the accuracy of the appraisals], the jury might have inferred appellant knew the loan transaction was a scheme to defraud Home Savings. On the other hand, if appellant thought the appraisals were correct, he may have been cast in a very different light. Thus, when the trial judge told the jury:

> That is the reason I said a moment ago that if you take inferences that might

be drawn from this evidence the Government asks you to draw, that the guilt of this man is overwhelming. When a person will on the same day he buys a piece of farm land for $167,000 which he contracted to borrow $500,000 on before he bought it and then uses part of it to pay for it, if you accept the inference from that then the Government says it's overwhelming as to his guilt in the conspiracy and these other acts which I will review. And frankly, as I have told you a moment ago, you are free, and you must exercise your own judgment in arriving at your own conclusions and inferences and find what the facts are, but it's almost inconceivable that a man in the position of this man would sit here and say that he did not know that he was doing anything, that they told him it was all right for him to buy a piece of property for $167,000 and contract to borrow $500,000 on it, and then apply that amount to pay the purchase price. It's almost inconceivable, but that's up to you. As I said, you are the ones to draw these inferences from it because you are the exclusive judges and in fact you can turn a person loose that you felt was guilty if you wanted to. * * That is the exclusive province of the jury if you wanted to.

As I told you, anything that I say that you disagree with, you disregard it so far as comments on the evidence is concerned.

I think the evidence is actually wholly undisputed so far as the material evidence in this case is concerned. . . .

he essentially directed a verdict of guilty against appellant on the issues of knowledge and intent which were the crux of all five counts. Moreover, the reminders to the jury that they were the fact finders were so buried in the prosecutorial instruction that they were rendered ineffectual.

The court also charged the jury:

> If you accept the testimony of the witnesses here and the inferences that the Government asked you to draw from the facts that have been proved

undisputedly, the evidence is overwhelming as to the guilt of the defendant on every count.

This portion of the charge, although milder than those previously quoted, amounts, essentially, to telling the jurors they should convict unless they believe the prosecution witnesses are lying, or that the inferences the Government urges are improbable. The province of the jury is, of course, far broader. This charge or slight variations of it has appeared in a series of cases, of which this is the fourth, that have been reversed by this Court because the charge directs a guilty verdict. United States v. Dillon, 5th Cir. 1971, 446 F.2d 598; United States v. Dopf, 5th Cir. 1970, 434 F.2d 205; United States v. Garza, 5th Cir. 1970, 426 F.2d 949.[2] The Government argues, however, that this instruction was sanctioned in United States v. Blue, 5th Cir. 1970, 430 F.2d 1286.

In *Blue* we approved the following charge:

I will state to you in passing, if you accept the testimony of these witnesses then there is sufficient evidence for you to find each of these Defendants guilty *under this count* but their credibility is a matter for you to pass on. If you do not accept that evidence as credible or believable, then that is for you to decide, because you pass on that. I merely give you these instructions. If you do not accept that testimony offered by the Government, then, of course, you would find the Defendants not guilty. If you believe the evidence of the Government or these witnesses here, there is sufficient evidence for you to find these Defendants guilty.

2. In United States v. Musgrave, 5th Cir. 1971, 444 F.2d 755, the district court was also reversed for directing a guilty verdict. However, in *Musgrave* the charge at issue here was not given.

3. In *Dillon, Dopf,* and *Garza, supra,* the district court was reversed because of jury instructions similar to those quoted throughout this opinion. In these cases this Court did not isolate the *Blue* charge as the basis of reversal but rather set out at length argumentative jury instructions

*Blue* was a direct evidence case. Two eye witnesses identified the accused as one of the robbers of a savings and loan association office. The evidence was overwhelming and the charge virtually impeccable aside from the quoted portion. This Court held that the charge taken as a whole was not prejudicial to the accused.

■ The charge now before us goes far beyond the outer limits of *Blue.* The jurors were not told simply that if they believed the Government witnesses, there was sufficient evidence to convict, but were instructed that the facts had been proved indisputably and that the evidence was overwhelming. Moreover, in *Blue* the jury was instructed that there was "sufficient evidence" to convict if they believed the direct, virtually unrefuted evidence of the Government. In the instant case they were instructed that there was "overwhelming" evidence if they believed the testimony of the Government witnesses *and* the *inferences* that the Government asked the jury to draw from the facts. This charge greatly expanded that approved in *Blue.* Nevertheless, the charge in the case before us and those in its three predecessors indicate the potential for mischief in the *Blue* charge. Standing alone it could be interpreted by a jury as a directed verdict of guilty. When embellished, as in this case, the *Blue* charge clearly becomes a directed guilty verdict. In light of *Dillon, Dopf,* and *Garza, supra,* the present viability of *Blue* is tenuous at best. However, so that no doubt will remain, we decide that the *Blue* charge is no longer approved in this Circuit.[3]

that included the *Blue* charge or slight variations of it. In *Dopf* this Court distinguished *Blue* on the ground that the district judge in *Blue* had not bolstered the credibility of the witnesses and had not insisted on the guilt of the accused.

In the instant case, which presents an argumentative charge and insistence on the guilt of the accused, we could distinguish *Blue.* We believe, however, the better course, in view of the recurrence of the *Blue* charge in expanded form and the attendant reversals, is to disavow it.

## III.

Appellant contends the trial court's charge failed to inform the jury of the elements of the offenses charged. The court instructed the jury on the second count:

> The second count charges Musgrave with intent to injure and defraud had an appraisal prepared knowing it was grossly inflated for the purpose of making these loans and representing the fair market value was sufficient to loan this some $1,400,000 and whether he knew they were inflated. You have heard the testimony. And then this defendant stands charged with aiding and abetting. Well, of course, if you find he had intent, there is no dispute about aiding and abetting because he is the one who furnished the property in the amount that was going to be paid on it, so if you accept the evidence and the inference of the Government, there is certainly sufficient on the second count to find this defendant guilty.

■■ Not only did this charge direct a verdict against the accused, it also failed to delineate the requisites of the offense or name the person or institution defrauded. The jury was told that appellant had to possess intent but was not told what he must have intended to do. Moreover, the charge says nothing about knowledge that the appraisals were inflated or whether they were in fact inflated, questions that should have been for the jury.[4]

Just as an indictment which omits an essential element of the crime charged must be dismissed as fatally defective, the trial judge's failure here to instruct the jury on all the essential elements of the crimes was plain error.

Although probably harmless in its original context, the *Blue* charge has since been cited repeatedly by the Government as authority for jury instructions that clearly direct verdicts against the accused.

4. We agree with the Government's contention that the jury charge must be read

United States v. Musgrave, 5th Cir. 1971, 444 F.2d 755, 764. *See* Walker v. United States, 5th Cir. 1965, 342 F.2d 22, 25 cert. denied 382 U.S. 859, 86 S.Ct. 117, 15 L. Ed.2d 97. In Williamson v. United States, 5th Cir. 1964, 332 F.2d 123, 133, this Court said:

> [T]he charge of the court seems to us to have been way too summary in advising the jury as to the nature of the crime and the acts required to be established to return a verdict of guilty . . . [T]he question of guilt or innocence was placed on the jury with practically no guidance as to the elements of the crime.

The infirmity in the court's charge noted in *Musgrave, Walker* and *Williamson* is present in the instant case and is reversible error.

Since this case must be retried, we shall not discuss separately the court's charge on each count. We note, however, that the deficiencies present in the charge on count two are also to be found in the other counts except count one. Finally, it must be emphasized that a precise charge, setting out under each count the elements of the offense charged and the facts and intent that the prosecution must prove, is especially important in a complex fraud case such as the one before us.

## IV.

■■ Appellant argues that the trial court erred in not adequately instructing the jury that the indictment was not evidence and that knowledge of the conspiracy was necessary. Indictments are not evidence to be considered by the jury and knowledge of the existence of a conspiracy by an alleged member is, of course, necessary for his conviction of conspiracy. The jury should be instruct-

as a whole. That does not mean, however, that mentioning knowledge or intent somewhere in the jury instruction is sufficient when careful instructions on these elements of an offense are required under each of several different counts.

ed on these matters in plain language, not obliquely. Having concluded that this case must be retried by a different judge, we see no purpose to be served by ruling on the exact language complained of by appellant.

## V.

Appellant contends the trial court erred in refusing his motions *in limine* to keep from the jury the fact that appellant's codefendants, Musgrave and Bryant, had previously been convicted by a jury. In opposing this contention, the Government relies on United States v. Aronson, 2d Cir. 1963, 319 F.2d 48. In *Aronson* a co-conspirator of the defendant had pled guilty and was on the stand as a prosecution witness. When asked if he had ever been convicted of a crime he said that he had. It being apparent to the jury from the line of questioning that the witness had pled guilty in the case presently being tried before it, the court instructed the jury that it was not to consider the codefendant's guilty plea in deciding the guilt or innocence of the accused. Similar instructions were given in the cases cited in *Aronson* after one of multiple defendants pled guilty after the commencement of the trial. In these cases the court felt the need to explain the absence of certain defendants and warn the jury not to consider their guilty pleas.

 The case at hand is similar to but distinguishable from *Aronson, supra*. The jury was read the indictments naming Musgrave, Bryant, and Koon, as well as appellant. This called their attention to the absence of the codefendants as events in *Aronson* and its predecessors did. It did so, however, to a far lesser extent. The jury was not confronted with a witness on the stand who had pled guilty in the case before them or with three defendants in the dock where the day before there had been five. We think the proper course for the trial court in the instant case would have been to tell the jury (1) that they should not consider what might have occurred in a previous trial of the codefendants but

must independently determine their guilt or innocence on each count based on the evidence presented, and (2) that the guilt or innocence of appellant's codefendants, which might have been decided in a prior trial, should not be considered in deciding the guilt or innocence of appellant. Instead, the court announced to the jury before the presentation of evidence and in its charge that a jury had found Musgrave and Bryant guilty. In a case such as this one, in which it appears from the indictment that the guilt of each defendant is closely tied to that of the others, the court should not needlessly tell the jury the results of a prior trial.

## VI.

Finally, appellant argues that the trial court should have admitted as evidence proof that he filed suit in state court against his codefendants and others in September, 1968 to set aside the loan-purchase agreement that formed part of the basis for this prosecution. Appellant alleges the filing of this suit reflects on his intent in the transaction with Home Savings and is thus relevant. Appellant also complains of the exclusion of evidence on his plans for developing the land that formed part of the security for the loan.

 Even if evidence in support of a defense is "fragile," "weak [sic] insufficient, inconsistent, or of doubtful credibility," it should be admitted. United States v. Musgrave, *supra*, 444 F.2d at 765. Nevertheless, even under this liberal standard, we cannot tell from the record before us whether the civil suit filed by appellant was an action that might indicate he, Musgrave, Bryant, and others were not conspirators or was for some reason irrelevant to this case. The record is also uninformative on the relevancy of plans for the farmland collateral. We therefore express no opinion on either of these matters.

## VII.

Appellant's judgment of conviction is reversed on all counts and remanded for a

new trial on counts one, two, four, and six. The district court is further ordered to enter an order dismissing count seven.

Reversed and remanded.