**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leonard WILLIAMS, Defendant-Appellant.**

**No. 72-2320.**

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1973.

John Tucker, Birmingham, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., John S. Salter, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before MORGAN, CLARK and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellant Leonard Williams was convicted by a jury of violating 18 U.S.C. § 2313[1] in connection with his purchase of a 1971 Lincoln Continental Mark III. The primary issue on appeal is whether the trial court committed prejudicial error in its instructions to the jury. Having concluded that such error is present, we reverse appellant's conviction and remand for a new trial.

The circumstances under which appellant purchased the automobile were disputed at trial, the question being whether Williams purchased the car "knowing the same to have been stolen." On December 10, 1971, FBI Agent Byron, accompanied by Investigators Payne and Longshore of the Etowah County, Alabama Sheriff's Department, went to appellant's home to question him about the automobile. After he advised Williams of his constitutional rights, Byron checked a vehicle identification number on the automobile to verify that it was stolen. He then questioned Williams concerning his possession of the car. Appellant stated that he had purchased the car from a man in Birmingham for $6000 cash but had not received either a bill of sale or a receipt. Agent Byron told Williams that he did not believe him. Williams replied that he would tell the truth, but Byron did not question Williams further at this point. Longshore and Payne then arrested Williams for state liquor law violations, and he was taken to the county jail. While at the jail Williams signed a statement purporting to relate the circumstances surrounding his purchase of the Lincoln Continental.[2] The statement was prepared by Agent Byron and is based on a conversation between him and Williams

1. This statute reads:

"Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. The full text of this statement as it was admitted into evidence at the trial is as follows:

"Gadsden, Alabama. December 10, 1971. 3:59 p. m.

"I, Leonard Williams, make the following free and voluntary statement to Charles Donald Byron, Special Agent, FBI, and L. P. Payne, Investigator, Etowah County.

"I understand I am being questioned concerning a stolen Lincoln Continental Mark III.

"A friend of mine, Ronnie Lee Essex, in Chicago told me of a man in Chicago who steals, transports and sells stolen cars. His name is Richard Thomas, Jr.

"Sometime in October, 1971, a man called Tyron called me and asked if I wanted to buy a Cadillac. I said that I wanted a Mark III. And he said okay.

"He called again a few days later and told me to send $200 via Western Union which I did to his sister-in-law.

"A few weeks later I called Chicago number 734–3266 and left word for Tyron to hurry up. Thomas' nickname is 'Huck'.

"About November 3rd, 1971, Tyron called me and said he had a green over green 1970 Mark III for $1,200. I sent $800 via Western Union to Ronnie Lee Essex who gave it to Thomas. I told Tyron I would give him the final $200 when he delivered the car.

"About November the 5th, 1971, someone drove to my house in a green over green Mark III which is the same car Special Agent Byron and Investigator Payne examined in my driveway today. The car had no tag on it until I bought a 1972 Alabama tag in my wife's name.

"I gave this person $200 when he gave me the car and two keys.

"This person is a Negro male, in his late 20's, five feet ten, 190 pounds, muscular build, who wore sharp looking clothes and a hat. He had a goatee and mustache.

"I knew the car had to be stolen because it was so cheap and I received no papers with it. I figured the car was from Illinois.

"I have read this statement of three pages and it is true.

"Signed: Leonard Williams."

which took place en route to the county jail.

Appellant took the stand in his own defense. He testified that he became scared when Byron told him the car was stolen and for this reason told Byron that he purchased the car in Birmingham for $6000. In an effort to refute his signed statement, he further explained that he believed the reduced purchase price was the result of the car having been previously wrecked; that he purchased the car from a man in Chicago and did not know it was stolen until told so by Agent Byron; and finally that the statement was not in his own words, thus hoping for the inference that the statement was not an accurate paraphrase of his conversation with Agent Byron and, therefore, not credible. Appellant also tried to impugn the voluntariness of the statement by his testimony that he believed he would have been required to spend the weekend in jail had he not made it.

After additional proceedings not here pertinent, the court gave its oral charge to the jury.[3] Williams contends that the effect of these portions of the charge was to direct a verdict of guilty against him.

In assessing this contention we begin with the proposition that a defendant has a right to trial by an impartial jury, and that the trial court should not command, unduly influence or coerce a verdict from a jury. Federal trial judges have retained, however, the historically based power to comment on the evidence;[4] and when reviewing the propriety of a trial court's jury charge, we must consider the charge as a whole, in its totality, without isolating statements which may appear prejudicial from the context in which they were made. United States v. Dopf, 434 F.2d 205 (5th Cir., 1970); Tillman v. United States, 406 F.2d 930 (5th Cir., 1969).

After instructing the jury on the presumption of innocence, the difference in direct and circumstantial evidence, and outlining the elements necessary for the government to establish in order to prove defendant guilty of the crime charged, the court reached that part of the charge under attack in this appeal. The court began its comment on the evidence by telling the jury that it rarely commented on the evidence and in seven previous trials that week had made no comment. At this juncture the court had already injected two completely irrelevant elements into its charge, that it rarely commented on the evidence and that it had not made any comment in seven previous cases that week. This latter element could easily tend to tie the case under consideration to the other seven cases. The jury might wonder why the other cases were different from this one—an inquiry having no place in the jury's efforts to determine whether Leonard Williams was guilty. A jury

---

3. The portions of the charge under attack here are as follows:

"Now, ladies and gentlemen, in the Federal Court in criminal cases, the judge has the right to comment on the evidence. It is something that I rarely do. I think we tried some seven cases here this week and I made no comment on the evidence in any of these cases. At times I feel that it becomes the duty of the judge to comment on the evidence, particularly where there is a direct conflict in the evidence. Before doing so, and one reason I rarely ever comment on the evidence is that in making a comment on the evidence, I must tell you, to begin with, that you have a right to completely disregard any comment that I might make, because it is your duty to determine the facts and not mine.
\* \* \*
"If you believe that this statement is a true statement and that it was voluntarily given, and if you believe the testimony of the officers in this case, Mr. Byron in particular, who took this statement, the defendant has admitted guilt in this statement.

"On the other hand, if you believe the defendant's explanation of why he gave this statement of what happened and disbelieve this statement and disbelieve the testimony of the agent, you should find the defendant not guilty."

4. See, generally, 9 Wigmore on Evidence, § 2551 (3rd Ed. 1940).

might also wonder what was so special about this case that the court was motivated to break its apparently longstanding practice of not commenting on the evidence. Again, such a question had no place in the jury's deliberations concerning whether Williams was guilty.

■ The court continued by saying that sometimes it felt a duty to comment on the evidence, particularly when the evidence is in direct conflict. This statement could lead a jury to the conclusion that there was seldom conflicting evidence in the cases the court tried or, at least, that there wasn't conflicting evidence in the other seven cases tried that week. The court then clarified its earlier statement by explaining that the reason why it rarely commented on the evidence was because the jury could disregard the comments. The statement tends to place the court in the inappropriate role of an advocate. *See, generally,* Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); Dopf v. United States, 434 F.2d 205 (5th Cir., 1970). This paragraph leaves us with the impression that the trial court simply could not refrain from commenting on the evidence because of a fear that the jury might miss the boat and find the defendant not guilty. While we seriously doubt that this is what the court intended to convey, we are nevertheless hesitant to conclude that the court's remarks did not leave the jury with the same impression which an objective reading of the charge left with us. A trial court must be ever aware that "the influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" Quercia v. United States, *supra,* at 470 of 289 U.S., at 699 of 53 S.Ct.

If these comments were only a small part of an otherwise fair and carefully framed charge, we would be inclined to find them harmless even though we do question their propriety. With these prefatory comments aside, however, the court proceeded to its actual comment and summarization of the evidence, and in so doing erroneously restricted the jury's consideration of the evidence, as well as giving a somewhat distorted picture of the problem which the jury had to resolve.[5]

■ The court instructed the jury that if it believed the statement was true and was voluntarily given, and if it believed the testimony of the officers who took the statement, the defendant

---

5. Speaking generally of a trial court's right to comment on the evidence, the court in Dopf v. United States, *supra,* at 209 of 434 F.2d, said:

"The trial judge has, of course, the right to analyze and comment on the evidence and to direct and assist the jury whenever he considers it necessary in reaching a just result. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); Kyle v. United States, 5 Cir., 1968, 402 F.2d 443. His role is not limited to that of moderator or umpire. Nor is he a 'mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done.' Rudd v. United States, 8 Cir., 1909, 173 F. 912, 914; National Dairy Products Corporation v. United States, 8 Cir., 1965, 350 F.2d 321, 333. '[H]e is the governor of the trial for the purpose of assuring its proper conduct and determining questions of law.' But this privilege to 'comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order ·to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury "is necessarily and properly of great weight" and "his lightest word or intimation is received with deference, and may prove controlling."'" Quercia v. United States, 289 U.S. at 469, 470, 53 S.Ct. at 698, 699, 77 L.Ed. 1321.

had admitted guilt in the statement. The court continued by stating the findings it felt were necessary for the jury to reach a verdict of not guilty. It must (1) believe the defendant's explanation of why he gave the statement; *and* (2) disbelieve the statement; *and* (3) disbelieve the testimony of the government witness, Agent Byron. The court's instructions thus erroneously narrowed the credibility issue to an all or nothing proposition. Moreover, the conjunctive structure of the charge conditions the belief of defendant's explanation of why he made the statement on the disbelief of Agent Byron's testimony. The jury was free, however, to disbelieve any or all of Agent Byron's testimony for reasons entirely unrelated (such as his demeanor on the witness stand) to defendant's statement. The jury could fail to believe defendant's explanation of why he gave the statement without that conclusion precluding it from disbelieving the statement. The court's charge would lead the jury to believe that this would not be an appropriate result.

To find for the defendant on our facts, the jury would not have to believe that the government witnesses lied in the sense that they deliberately related a nontruth, or, on the other hand, that the defendant's version of the circumstances surrounding the purchase of the car and the making of his statement were completely believable. The jury could reasonably conclude that because of the circumstances in which the statement was made, it was simply not sufficient to support a conviction beyond a reasonable doubt. The court's charge effectively foreclosed this range of choices from the jury's consideration and amounted to little more than telling the jury that it should convict unless it believed the government witnesses were lying. "The province of the jury is, of course, far broader." United States v. Womack, 454 F.2d 1337, 1344 (5th Cir., 1972).

The portion of the court's charge under discussion is very similar to the charge given in United States v. Blue, 430 F.2d 1286 (5th Cir., 1970).[6] This court originally held that the *Blue* charge was not prejudicial error, but in United States v. Womack, 454 F.2d 1337 (5th Cir., 1972), the charge was expressly disapproved,[7] and its further use proscribed because of the potential prejudice inherent in *Blue*-type charges. This potential for prejudice is amply demonstrated by the *Blue*-type charges given in United States v. Garza, 426 F. 2d 949 (5th Cir., 1970); United States v. Dopf, *supra*; United States v. Dillon, 446 F.2d 598 (5th Cir., 1971); United States v. Womack, *supra*, and United States v. Lowry, 456 F.2d 341 (5th Cir., 1972), in which convictions were reversed because of the prejudicial character of the jury charges. While we agree with the government that the charge given here, like the charge actually given in the *Blue* case, is perhaps not as egregious as those given in the previously cited cases, that point of agreement is not the determining factor in this appeal. In *Womack* this court held that because the *Blue* charge, standing alone, could be interpreted by a jury as a directed verdict of guilty and because of its consequent potential for prejudice, it was necessary to proscribe any further use of the charge. This decision was an implicit recognition of the futility of a semantic comparison between the *Blue*

6. The charge given in *Blue* is as follows:
"I will state to you in passing, if you accept the testimony of these witnesses, then there is sufficient evidence for you to find each of these Defendants guilty under this count but their credibility is a matter for you to pass on. If you do not accept that evidence as credible or believable, then that is for you to decide, because you pass on that. I merely give you these instructions. If you do not accept that testimony offered by the Government, then, of course, you would find the Defendants not guilty. If you believe the evidence of the Government or these witnesses here, there is sufficient evidence for you to find these Defendants guilty."

7. In *Womack* the court said at 1344:
"[S]o that no doubt will remain, we decide that the Blue charge is no longer approved in this Circuit."

512

charge and subsequent *Blue*-type charges as a means of determining whether a particular charge was prejudicial error.[8] The underlying rationale of the decision in *Womack*, as well as in *Garza, Dopf, Dillon* and *Lowry*, is that when a court's charge could reasonably be construed as—or has the practical effect of—directing a verdict of guilty, the charge exceeds the bounds of fair and impartial comment and is, therefore, error. *See,* United States v. Wood, 458 F. 2d 1351 (5th Cir., 1972).

Considering, as we must, the court's charge in this case as a whole, we hold that the court's prefatory remarks, coupled with the giving of a *Blue*-type charge, requires us to reverse appellant's conviction and remand the case for a new trial.

Reversed and remanded.

8. "In *Dillon, Dopf,* and *Garza, supra,* the district court was reversed because of jury instructions similar to those quoted throughout this opinion. In these cases this Court did not isolate the *Blue* charge as the basis of reversal but rather set out at length argumentative jury instructions that included the *Blue* charge or slight variations of it. In *Dopf* this Court distinguished *Blue* on the ground that the district judge in *Blue* had not bolstered the credibility of the witnesses and had not insisted on the guilt of the accused.

"In the instant case, which presents an argumentative charge and insistence on the guilt of the accused, we could distinguish *Blue*. We believe, however, the better course, in view of the recurrence of the *Blue* charge in expanded form and the attendant reversals, is to disavow it."
*Womack, supra,* n. 3 at 1344.