UNITED STATES of America,
Plaintiff-Appellee,

v.

James D. VEAL, a/k/a "The Colonel",
Defendant-Appellant.

No. 81-6186.

United States Court of Appeals,
Eleventh Circuit.

April 25, 1983.

Robert A. Boland, Tampa, Fla., (Court-appointed), for defendant-appellant.

Stephen M. Crawford, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY, Circuit Judge, and PITTMAN *, District Judge.

PITTMAN, District Judge:

The defendant, James D. Veal (Veal), was charged in a two-count indictment along with Clinton George Schindler (Schindler) and Charles Wilson Cawthon (Cawthon) with one count of conspiracy to possess with intent to distribute marijuana, a controlled substance, from a date unknown to the grand jury until August 2, 1980, in violation of 21 U.S.C. §§ 841(a)(1)[1], 846[2] (1976). The second count was against Cawthon for possession of marijuana in violation of § 841(a)(1).

Defendants Cawthon and Schindler were tried and convicted in January, 1981. Appellant Veal was subsequently arrested. Veal pleaded not guilty to the indictment. The trial of Veal commenced on October 5, 1981. On October 7, 1981, the jury returned a verdict of guilty. The defendant asserts five errors on this appeal: (1) that the trial court erred by instructing the jury, prior to his testifying, that Schindler was charged in the same indictment as Veal and previously had been convicted and sentenced as a co-defendant; (2) that the trial court erred by failing to inform the jury that Schindler was instructed to testify under penalty of contempt citation; (3) that statements made by Veal and Cawthon subsequent to the deliveries of money and marijuana were

---

\* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. § 841. Prohibited acts A
 (a) Unlawful acts
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

\* \* \* \* \* \*

2. § 846. Attempt and conspiracy
 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

erroneously admitted into evidence; (4) that the defendant's proposed instruction regarding "future conspiracy" was erroneously refused; and (5) that the trial court erred by withholding a jury request from defense counsel during deliberations. Finding these claims without merit, we affirm.

On July 25, 1980, Schindler met with Woodrow Hill, an undercover narcotics detective for the Tampa Police Department, to discuss the purchase of one thousand pounds of marijuana. Schindler telephoned Veal to determine whether he would be interested in buying one thousand pounds of marijuana. Veal inquired whether Schindler had a sample of the marijuana; Schindler replied that he did not. Veal requested that if he obtained a sample that proved adequate Schindler should recontact him.

On August 1, 1980, Veal arrived in Tampa and checked into the Tahitian Inn Motel. The next day, Schindler, Veal and co-defendant Cawthon met there with Hill and DEA Agent Lowell Miller. Veal and Cawthon advised that they wanted to purchase one thousand pounds of marijuana. After some negotiations, the parties agreed upon a figure of $94,075 for three hundred and fifty pounds of marijuana. It was agreed that the remainder of the six hundred and fifty pounds would be picked up later that afternoon. Veal removed a clothes bag containing $94,075 from a rack inside the room, and laid it on a bed before the narcotics officers. The agents took the money, and Cawthon left the Tahitian Inn with the marijuana. Cawthon was arrested soon thereafter still in possession of the marijuana. Veal remained in the motel room, where he indicated two other individuals would come to the area and pick up the remaining six hundred and fifty pounds.

*The Cautionary Instruction*

During its case-in-chief, the prosecution called Schindler to testify. In response to the government's initial question, Schindler answered that he had been advised by counsel not to testify unless he received "transactional immunity".

A conference was held outside the presence of the jury, at which time the district court determined that Schindler was not entitled to such immunity.[3] When the presentation of evidence resumed the next day, the district court gave the jury the following instruction:

THE COURT: Good morning. Be seated. Thank you.

Ladies and gentlemen, you will remember that just prior to the time we recessed yesterday, the Government had called as a witness Clinton George Schindler, who is present in the witness stand, and that in your presence, Mr. Schindler had indicated that he did not wish to testify unless he was given what he referred to as "use [sic] immunity".

Now, I have previously informed you that Mr. Schindler is one of the three people mentioned in the Indictment and charged in the Indictment.

I have previously told you that he had been severed from the trial of this case, that you were not to be concerned with that fact.

I now instruct you that Mr. Schindler was tried at a previous time and was found guilty and has been at—was sentenced.

Now, you are not to hold that against Mr. Veal. Mr. Veal has pled not guilty. He is entitled to a jury trial and which is now in progress and you will be required to, if you can, return a verdict as to him. But, with regard to Mr. Schindler, those are the facts.

Mr. Schindler, at his previous trial, although he was not required to do so, took the witness stand and testified and the parties have a transcript of that testimony for their use if they wish at this trial. But it is not part of the evidence in this case.

Now, I am sensitive to, as we all should be, to the Constitutional protections provided for persons who may be subject to prosecution. One of those is the Fifth Amendment right not to be required to incriminate yourself.

---

**3.** This determination is not at issue in this appeal.

Another provision which protects a person is the requirement that no person can twice be charged or tried for the same offense. That is called double jeopardy protection.

I have determined that with regard to matters that he testified about previously under oath in this Courtroom and with regard to matters concerning the charge of which he has been convicted, Mr. Schindler, the witness, has no need for immunity protection. He has waived or no longer has that Fifth Amendment right and therefore, I have instructed Mr. Schindler that the Government is entitled—the jury is entitled to his testimony about matters that are relevant to this trial and I have instructed him that he should answer the questions.

Now, Mr. Schindler was given an opportunity between 4:00 yesterday and today to confer on one or more occasions with an attorney who, at the Court's request, came and conferred with Mr. Schindler. He is the attorney who represented Mr. Schindler at a previous time and I have asked him to be present today so that Mr. Schindler would have counsel to advise him, if he wished, if Mr. Schindler wished, and I want to introduce him at this time and express arreciation [sic] for his being present, Mr. B. Anderson Mitcham.

Mr. Mitcham is an attorney and that is who that man is and he is seated there for that purpose.

Now, with that explanation, we will proceed and you may proceed.

Applicant contends the district court erred in instructing the jury as to Schindler's prior trial and conviction, and in denying Veal's motion for mistrial on that ground made immediately following the above instruction. The government maintains that because defense counsel insisted on using Schindler's prior conviction for impeachment and for factual matters, the cautionary instruction was proper.

It is clear from the record of the conference held out of the presence of the jury that the district court was led to believe that defense counsel intended to bring out Schindler's prior conviction in this case, in which Schindler and Veal were co-defendants. Throughout the conference the court and counsel referred to Schindler's prior conviction under this indictment. The court, in an effort to fashion an appropriate cautionary instruction, made the following statements outside the presence of the jury:

THE COURT: Well, here is the situation: The jury heard Mr. Schindler say that he did not wish to testify unless he is given use immunity. The jury knows that Mr. Schindler is named in Count Two [sic] of this Indictment.

I have previously instructed the jury that Mr. Schindler and Mr. Cawthon have been severed from the trial of this cause. That is all I said and I said you are not to be concerned about that.

Sooner or later, I have a feeling that Mr. Boland is going to ask Mr. Schindler if he's been convicted of a crime. If he should elect not to do that, the jury might not otherwise know that Mr. Schindler—what happened with regard to Mr. Schindler. They see him here. They know he is not on trial here today. They know he is named in the Indictment.

Under all of those circumstances I—I am going to ask Mr. Boland now, Mr. Boland—

MR. BOLAND [Defense Counsel]: Yes, sir.

THE COURT: If Mr. Schindler testifies, do you intend to ask him whether or not he has been convicted of a crime?

MR. BOLAND: Yes, sir, I do, both as to the issue of credibility and also as a factual matter, he was in this conspiracy which started with the actions of Mr. Schindler and Detective Hill.

THE COURT: All right, sir. Thank you. You have answered my question.

I thought—I didn't mean to put him on the spot, but I don't know why not. He is going to have to make an election very shortly and I think he would be derelict in his duty if he didn't ask that question and the truth, of course, is the truth.

Under all those circumstances, I think I might, when the jury comes in, explain that as the jury knows, Mr. Schindler is named in this Indictment, that Mr. Schindler was previously tried and convicted of this offense, that they should not hold that against Mr. Veal; that Mr. Veal has pled not guilty and that their responsibility is to return a verdict against Mr. Veal. He has the presumption of innocence.

Until this time the court had been careful not to let the jury know of the co-defendant's conviction.

Before Schindler took the witness stand the jury was aware that the indictment named Schindler and Cawthon, as well as the appellant. When Schindler took the witness stand, his involvement was brought to the attention of the jury. While on the witness stand in the presence of the jury, Schindler asked for transactional immunity. This was about 2:30 p.m. The court anticipated a lengthy conference (subsequent events fulfilled the expectancy), and the jury was excused until the following day.

During the conference in response to the trial court's inquiry, appellant's counsel informed the court he intended to ask about Schindler's prior conviction, and the factual matters. In view of the trial court's caution in keeping this from the jury before Schindler took the witness stand and the context of the statements made by defendant's counsel during the conference, it became clear that appellant's counsel was referring to the conviction and matters related to the subject matter for which Veal was being tried and for which Schindler was a named co-defendant. The court should be able to rely on statements made to it by trial counsel. The appellant contends he meant to keep his options open and he may or may not have gone into the prior conviction. This is not what he told the court. The trial court should not be required to joust wits with trial counsel in a cat and mouse game.

The trial court fashioned a proposed cautionary instruction including a reference to Schindler's prior conviction in this case with the caveat that Schindler's conviction was

in no way to influence the jury's determination of the guilt or innocence of appellant Veal.

Counsel did not make any objection to the proposed instructions which the trial court subsequently gave as stated in the conference. The trial court was making an effort to maintain an orderly and fair procedure and appellant's counsel cannot now claim error under these circumstances by the trial judge's refusal to declare a mistrial upon giving these instructions.

Whenever circumstances present themselves that would lead the jury to speculation, conjecture and suspicion that would leave an impermissible inference of a defendant's guilt, it is proper to give cautionary instruction. Schindler was a named co-defendant, he was not on trial, he took the witness stand, and when questions were propounded to him concerning the subject matter of the appellant's trial he asked for transactional immunity and the prolonged recess took place. Thereupon in conference the appellant's counsel advised the court that he intended to ask Schindler concerning his conviction and factual matters of the case on trial. Under similar circumstances this circuit and other circuits have held that a co-defendant's conviction cannot be considered as evidence of guilt of the remaining defendants and a cautionary instruction would prevent improper inferences. *See United States v. Hansen,* 544 F.2d 778, 780 (5th Cir.1977). *See also United States v. Beasley,* 519 F.2d 233, 239 (5th Cir.1975) (*citing United States v. Jones,* 425 F.2d 1048, 1054 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970)), *vacated on other grounds,* 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976).

Although these cases involve guilty pleas in the presence of the jury, the fundamental reasoning for the cautionary instruction is the same. *See United States v. Womack,* 454 F.2d 1337 (5th Cir.1972). This court's holding is consistent with that in *Womack,* wherein the trial court's denial of appellant's motion *in limine* to withhold from the jury the fact that co-defendant had previously been convicted by a jury was reasona-

ble error. The court in *Womack* stated that the jury was not confronted with a witness on the stand or with three defendants in the dock where the day before there had been five. *Id.* at 1346. In the case sub judice the witness was on the stand, he had been a co-defendant, there had been three defendants named in the indictment but only one on trial.

As in *Beasley,* the appellant herein was charged in a conspiracy. In addition thereto in the case sub judice, one of the co-defendants was on the witness stand claiming transactional immunity for the subject matter of the suit being tried. *Beasley* stated:

The crime of conspiracy by its very nature may lead to an improper jury finding of guilt by association with those found to be participants in the conspiracy.... This danger of transferred guilt is acute in this case where the evidence against the sole remaining defendant repeatedly refers to his relationship with persons who have suddenly and unexplainedly disappeared from the trial. "The potential prejudice of such an occurrence is obvious..."

519 F.2d at 239 (citation omitted). In the case sub judice the defendant did not suddenly and unexplainedly disappear but he was on the witness stand and as in *Beasley* the insulating instruction was warranted.

 If a co-defendant is convicted or pleads guilty out of the presence of the jury, the conviction should not be made known to the jury, but if the jury is aware of it or if, as here, the circumstances call for explanation, a full and complete cautionary instruction should be given. *See Hansen.* The trial judge in this case followed correct procedure in the first instance in keeping from the jury the disposition of Schindler's case, and in the second instance, the convicted co-defendant Schindler's appearance as a witness under the circumstances above outlined changed the posture

of the case, and the proper cautionary instruction was given.[4]

### Instructions Regarding Contempt Citations

During the conference prior to his testimony, Schindler was given the following instruction by the court:

I find, Clinton George Schindler, that you have no need of the use immunity you requested and therefore, I am ordering you to testify about questions relevant to your previous testimony which you have already given, relevant to the marijuana transaction and relevant to the cocaine transaction which allegedly occurred in a conversation between you and Detective Hill, whatever that was, and I tell you in all frankness that if you should fail to follow my instructions, my orders, *I have the right to adjudge you to be in civil contempt and to impose a sentence which would be in excess of the sentence you are now serving;* not as a threat, but so that you will be advised of the possible consequences.

Now, with that, are you prepared to tell me what you intend to do?

WITNESS SCHINDLER: Yes, sir.

MR. MITCHAM: Just a minute. Stand up.

WITNESS SCHINDLER: Yes, sir, Your Honor, I will testify.

(emphasis added). The emphasized portion of the court's order was not related to the jury.

The appellant contends that the failure to inform the jury that Schindler had been so warned prejudiced his case by enhancing Schindler's credibility. Schindler's credibility, it is argued, may have been diminished had the warning been disclosed.

The government points out that the court gave the jury the following instruction regarding Schindler's testimony:

4. In *United States v. Mattoni,* 698 F.2d 691 (5th Cir.1983), the Court of Appeals for the Fifth Circuit recently upheld a drug conspiracy conviction wherein a co-conspirator's guilty plea was admitted into evidence on direct by the U.S. There, as here, the admission did not

substantially affect the defendant's rights, the admission was for a proper purpose and was given no undue emphasis, the court gave a proper limiting instruction, and there was no attempt to use the admission as substantive evidence of guilt. *See id.* at 694.

"I have instructed Mr. Schindler that the Government is entitled—the jury is entitled to his testimony about matters that are relevant to this trial and *I have instructed him that he should answer the questions.*"

█ "The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged." *United States v. Turquitt,* 557 F.2d 464, 468 (5th Cir.1977). In determining legal relevance, the trial court has broad discretion, which is not to be disturbed unless clearly abused. *United States v. Johnson,* 558 F.2d 744, 746 (5th Cir.1977), *cert. denied* 434 U.S. 1065, 98 S.Ct. 1241, 55 L.Ed.2d 766 (1978). The trial court did not exceed its bounds of discretion.

Any further instruction would have been surplusage and unnecessary. A clear inference from the trial court's instruction is that the court could and might take measures to ensure the witness' compliance. The overruling of the motion for a mistrial on this ground is free from prejudicial error.

*Statements Made After Delivery*

This is a summation of appellant's contentions: There was a deal between Cawthon and the law enforcement agents to purchase three hundred and fifty pounds of marijuana. This amount was paid for and taken by Cawthon, who drove off with the marijuana, and was soon thereafter arrested. Veal made no statement regarding the subsequent purchase of six hundred and fifty pounds until after paying for three hundred and fifty pounds. Thus, evidence of any statement made by Veal regarding the six hundred and fifty pound negotiation was irrelevant as beyond the scope of the

conspiracy as charged. Fed.R.Evid. 402. Evidence of statements made by Cawthon after his arrest was hearsay, Fed.R.Evid. 802, and not subject to the exception that declarations of one conspirator may be used against another if made during the course of or in furtherance of the conspiracy charged, *see, e.g., Lutwak v. United States,* 344 U.S. 604, 618, 73 S.Ct. 481, 489–90, 97 L.Ed. 593 (1953).

The record shows there was evidence that the deal underlying the conspiracy count charged here was for one thousand pounds of marijuana.[5] Thus, Veal's statements regarding the disposal of the remaining six hundred and fifty pounds were probative of the facts, although possibly not in accord with the defendants' theory of the case.

█ Regarding the statements of Cawthon, the acts or statements of an alleged co-conspirator may be admitted at trial if relevant to prove the conspiracy existed, even if made after the conspiracy ended. *Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 21 (1974); *Lutwak v. United States,* 344 U.S. 604, 618, 73 S.Ct. 481, 489–90, 97 L.Ed. 593 (1953). Thus, statements made by Cawthon after his arrest were correctly received into evidence.

*"Future Conspiracy" Instruction*

The defendant Veal requested the following written instruction:

> If you find that the Defendant's statements and actions were directed to a future transaction and not the alleged conspiracy at trial, then you should find the Defendant not guilty.

The trial court declined to give this instruction over defense counsel's objection.

---

5. Q. Now, Detective Hill, directing your attention to July 25th, 1980, in your capacity as an undercover barcotics [sic] investigator, did you have occasion to negotiate a deal to sell a thousand pounds of marijuana with Mr. Schindler?
A. Yes, I did.
Q. And would you please tell the jury what exactly transpired on that date.
A. I—on the 25th, the morning of the 25th, I first spoke with Schindler over the phone concerning a possibility of having a large quantity of marijuana available.

He advised me that if possible that the marijuana was available, to call him back that night and that he had people that would be willing to buy a thousand pounds if I would arrange it.

\* \* ·\* \* \* \*

Then the discussion took place between Veal, Cawthon, Schindler, Hill and DEA Agent Miller on August 1, 1980, concerning one thousand pounds of marijuana as heretofore set out.

■ "It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence." *Perez v. United States,* 297 F.2d 12, 15, 16 (5th Cir.1961). This does not, however, entitle the defendant to a charge that is legally erroneous. The proffered instruction is confusing in that it is overly broad and argumentative with misplaced burden of proof.

The trial court had properly excluded evidence of Veal's discussions of deals beyond the initial one thousand pounds. There was evidence before the jury with respect to the remaining six hundred and fifty pounds of a one thousand pound transaction, of which three hundred and fifty pounds had been delivered. Veal was present and participated in the discussions concerning the sale and anticipated delivery of one thousand pounds, of which three hundred and fifty pounds were delivered. The charge is too broad and is argumentative. It does not separate Veal's and his co-conspirators' statements concerning one thousand pounds. Veal had participated in discussions at different times which included one thousand pounds. It ignores contemporaneous statements made about one thousand pounds when the three hundred and fifty pounds were delivered. In effect it is a directed verdict on an argumentative premise.

The charge was offered in support of defendant's theory of future transactions. It appears the burden of proof is placed on the defendant.

The burden of proof was on the government. It was a confusing charge.

The trial court correctly instructed the jury with respect to mere presence.

Appellant's reliance on *Perez* is misplaced. In that case the trial court impermissibly stressed the government's theory of the case to the exclusion of the defense theory. *See* 297 F.2d at 16. Such is not the case here.

*Jury Request*

The jury began deliberations in this case at about 10:10 a.m., October 7, 1981. At about 11:45, the court received a message from the jury in which they requested 1) the reading of portions of the testimony of a witness, and 2) to go to lunch. The jury did go to lunch and indicated they would return by 1:30 p.m. Defense counsel was told to return to court at 1:30 p.m. Defense counsel was late returning to court, arriving at 1:45 p.m. At 1:55, the court received a message from the jury that they had reached a decision.

Appellant contends that the court erred in allowing the jury to go to lunch before informing defense counsel of the jury's request to have portions of the transcript read.

■ The court did not instruct the jury in the absence of defense counsel, but intended to respond to their request at 1:30. Counsel was instructed to be present at 1:30. By his own admission, counsel was late in returning. The trial court handled the requests in a logical and reasonable manner.

Because no instruction was given outside the presence of defense counsel, the cases cited by appellant are inapposite. The court committed no error.

No error appearing, the judgment of the district court is

AFFIRMED.