**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bertha GARZA, Defendant-Appellant.**

**No. 27919.**

United States Court of Appeals,
Fifth Circuit.

May 19, 1970.

---

Jerry P. Childs, Richard J. Clarkson, Odessa, Tex., for appellant.

Seagal V. Wheatley, U. S. Atty., Jamie C. Boyd, R. Caballero, Asst. U. S. Attys., El Paso, Tex., for appellee.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

RIVES, Circuit Judge:

The first count of the indictment charged that Martin Chavez Lopez, Fred Moreno White and Bertha Garza, in violation of Section 174 of Title 21, United States Code, wilfully and knowingly conspired to receive, conceal and facilitate the transportation and concealment of heroin. Other counts charged Lopez and White with substantive crimes of selling heroin to one Eddie Brown and with knowingly and fraudulently receiving, concealing and facilitating the transportation and concealment of heroin. The jury found each of the defendants guilty as charged.

Bertha Garza appeals from her conviction and sentence to five years' imprisonment. On appeal she insists: (1) that the district court erred in denying her motion for judgment of acquittal; and (2) that the court committed errors in its charge to the jury.

I.

To decide whether the court should have granted Bertha Garza's motion for judgment of acquittal requires painstaking consideration of any evidence which may tend to link her with the alleged conspiracy. Three of the alleged overt acts named Bertha Garza:

"11. On or about January 29, 1969, MARTIN CHAVEZ LOPEZ, BERTHA GARZA and Eddie Brown held a meeting in front of El Rancho Motel in Odessa, Texas.

"12. On or about February 5, 1969, Eddie Brown had two telephone conversations with BERTHA GARZA.

"13. On or about February 13, 1969, Eddie Brown had two telephone conversations with BERTHA GARZA."

The Government's case depended largely on the testimony of Eddie Brown, a Special Agent of the Bureau of Narcotics and Dangerous Drugs, who posed as a narcotics buyer. The substance of his testimony, so far as it tends to connect Bertha Garza with the conspiracy, follows: Brown first met Bertha Garza on January 29, 1969 in front of Room 11 at the El Rancho Motel in Odessa, Texas, when Lopez introduced him to her. Just previously at Fred White's garage, Lopez had sold heroin to Brown and had told him that he would go to his El Rancho Hotel room to get additional heroin. Lopez left the garage in a 1960 Rambler automobile. As Brown followed in another car, he observed an unidentified female passenger in the 1960 Rambler with Lopez. En route to the motel Lopez switched from the Rambler to Brown's car and the female, then alone, drove the Rambler. On their further trip to the motel, Lopez told Brown that he would give him a telephone number and in case he was not in town to go by and see a friend named Bertha who worked at El Chinos Cafe and tell her "I was there to pick up a package." In a few minutes they arrived at the El Rancho Motel and Brown parked his car in front of Room 11, Lopez went in that room, returned and got in Brown's car and handed him eight folded pieces of note paper containing heroin, for which Brown paid Lopez. Brown and Lopez drove across the street to a service station. As they started from the service station, Brown saw the 1960 Rambler driven by a female who was later identified to him by Lopez as Bertha. Lopez told Brown he wanted to go back to the El Rancho Motel in order to meet a friend, Bertha, so she would know who Brown was. They turned and went back and walked over to the 1960 Rambler which was parked in front of Room 11. There Lopez introduced Brown as Pat to Bertha and told them if he was not there, that Brown was to come back and pick up the package from her. Brown identified the Bertha as the defendant, Bertha Garza, and testified that "she told me that if I came back and she did not remember me, to remind her who I was."

After thus meeting Bertha Garza on January 29, Brown on February 5 used an "undercover" phone at the Dallas Regional Office to call Odessa, Texas, FE 79394, Chinos Cafe, and asked to speak to Bertha. When a person answered by that name, "I asked her if Mr. Lopez was in town and she said he had not arrived as of yet but he would be in later on because she was the first one she [sic] always got in touch with when he arrived in Odessa. I stated I wanted her to tell him I would be in Odessa that night, for him to wait on me at Chinos Cafe."

Brown flew from Dallas to Odessa and there, at 8:30 P.M., made a second call to telephone FE 79394 "and asked to speak to Bertha and she said this was Bertha and I asked her if Lopez was in town and she stated he had waited on me at Chinos Cafe and since I did not arrive he had gone back to his hotel and I was to come by room 39 [in the Walker Hotel] and knock on the door and he would come out." Brown continued,

"I went by about 8:50 or 8:40 PM on the 5th and walked—exited my vehicle and walked over to room 39 and knocked and Mr. Lopez came out and told me that since I had not arrived earlier he decided to come back to his room. He and I got in my vehicle and he instructed me to drive to 606 Magnolia and Mr. Lopez exited my car and went into the house at 606 Magnolia."

606 Magnolia Street is a family dwelling where Bertha Garza lived, next door to Chinos Cafe. After a few minutes Lopez returned from that house with some folded pieces of note paper in his hand. He instructed Brown to drive back to Walker's Hotel, where they sat in the car and "discussed further transactions

as far as getting heroin." "And then he gave me the thirteen pieces of note book paper and in turn I gave him five hundred dollars of official Government funds." Brown and some other agents "field tested" this evidence, "and it gave a positive result."

Next, on Februray 13, 1969, Brown had two telephone conversations with Bertha Garza.

"At about 6:30 PM on February the 13th, 1969 I telephoned Chinos Cafe and spoke to Bertha and asked if Mr. Lopez had come to Odessa and she stated he had not but that probably he had car trouble or something and he would probably be in later on. * * * The next one was at 9:30 PM February the 13th, 1969 when I called Bertha at Chinos Cafe. * * * I asked Bertha if Mr. Lopez had arrived in Odessa and she stated he had and would be in room 39 and he would not be there until after 11:00 o'clock and wanted me to come by."

Brown arrived at the Walker Hotel about 11:40 P.M. and knocked on the door of Room 39. Lopez invited him in and delivered to him a woman's stocking containing some folded pieces of note book paper. "I then in turn told Mr. Lopez, after Mr. Lopez handed them to me, I then told him I had to go to my car to get the money out of my trunk. I walked out the back door of room 39 and opened the trunk of my car, which was the signal for the surveilance [sic] agents to make the arrest."

Other than Brown, the only Government witness who linked Bertha Garza with either of the other alleged conspirators was Rick Staton, Supervisor of the Narcotics Division, Texas Department of Public Safety, who participated in the surveillance on January 29. He saw a female come out of Fred White's garage and get in on the passenger side of the Rambler car. He undertook to follow that car but lost sight of it. A short time later his car was making a turn near 606 Magnolia Street when Lopez drove up in the Rambler and let a woman out at 606 Magnolia. He identified this woman as Bertha Garza and observed her walking toward the house.

All three defendants testified in their own behalf. None of them had any previous criminal record. Bertha Garza testified that she lived at 606 Magnolia Street in Odessa, Texas. She was thirty-six years old, had been married, had seven children and was divorced. For a year and six months she had been working for thirty-five dollars a week as a waitress at Chinos Cafe, close to where she lived. She knew Lopez only as a customer in the cafe, but knew his wife. Fred White she knew as a customer and had known him about two years. She had never ridden in or driven a 1960 Rambler automobile owned by White and had never been in or around White's garage. She had never seen the witness Brown until he took the stand. She had never been arrested for any other offense. She had never seen any dope or heroin. She had never received any phone calls from Brown. She did not know that Lopez stayed in Room 39 at the Walker Hotel. Her home was searched by the officers one night but nothing was found.

In support of the motion for judgment of acquittal, it is strenuously urged that the Government failed to prove that Bertha Garza had any knowledge of the fact that Lopez and White were dealing in heroin; that there must be proof aliunde of the existence of the conspiracy and of Bertha Garza's connection with it before Lopez's declarations made out of her presence can be considered;[1] that she cannot be found guilty of conspiracy by mere association; and that the jury could not reasonably determine beyond a reasonable doubt that Bertha Garza was guilty or that the evidence excluded every reasonable hypothesis but that of guilt.

---

1. As may be remembered, Brown testified to one conversation with Lopez in which Bertha Garza participated.

The jury's verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to sustain it. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. "Substantial evidence" means such relevant evidence as a reasonably-minded jury might accept as adequate to support a conclusion of defendant's guilt beyond a reasonable doubt. Riggs v. United States, 5 Cir. 1960, 280 F.2d 949, 953, 954. Otherwise expressed in circumstantial evidence cases, the evidence must be such that a jury might reasonably conclude it sufficient to exclude every reasonable hypothesis but that of guilt. Vick v. United States, 5 Cir. 1954, 216 F.2d 228, 232.

Applying those familiar standards, it seems to us that testimony of Eddie Brown and the other Government witnesses was sufficient to support a conclusion of every element of Bertha Garza's guilt beyond a reasonable doubt. The evidence as to her knowledge of the fact that Lopez and White were dealing in heroin was, however, entirely circumstantial. The jury might have believed the testimony of the Government witnesses and nonetheless have entertained a reasonable doubt that Bertha Garza may have been an innocent go-between used by Lopez in his dealings with Brown. Some such theory was Bertha Garza's only "out," consistent with the testimony of Eddie Brown. She did not, however, adopt any such defense. Instead, she specifically denied every detailed link to which the Government witnesses testified, which might connect her with the conspiracy. The jury could, of course, reasonably accept the testimony of Eddie Brown and the other Government witnesses as true, and reject the testimony of Bertha Garza as false.

The jury may well have considered Bertha Garza's denial of the facts to which Brown testified as false and as indicative of a consciousness of her guilt. Wilson v. United States, 1896, 162 U.S. 613, 620, 621, 16 S.Ct. 895, 40 L.Ed. 1090; United States v. Fabric Garment Co., 2 Cir. 1958, 262 F.2d 631, 639; McIntosh v. United States, 8 Cir. 1965, 341 F.2d 448, 457; De Vore v. United States, 9 Cir. 1966, 368 F.2d 396, 397; 2 Wigmore on Evidence, 3d ed., § 278.[2]

We conclude that the district court properly denied Bertha Garza's motion for judgment of acquittal.

## II.

As has been developed, while there was evidence from which the jurors could reasonably find Bertha Garza guilty beyond a reasonable doubt, there was also evidence which might raise in their minds a reasonable doubt as to whether she was a *knowing* participant in the criminal conspiracy. In the light of Chief Justice Shaw's caveat (n. 2, *supra*), her failure to defend upon that theory did not preclude the jury from considering it.[3]

The district court was careful to charge the jury:

"You are the exclusive judges and if I make any comment on the evidence in this case you may disregard it because it is merely my ideas about it or views. That is not binding on you. You are the exclusive judges of the facts. All that is binding on you is the law that you are to apply to those facts as I instruct you."

The judge then left the jury in no doubt as to his views.

---

2. Wigmore quotes a caveat from Shaw, C. J., in Com. v. Webster, 5 Cush. 295, 316:

"But this consideration is not to be pressed too urgently; because an innocent man, when placed by circumstances in a condition of suspicion and danger, may resort to deception in the hope of avoiding the force of such proofs." 2 Wigmore, p. 121.

3. That is particularly important in a joint trial where pressures are possible to persuade a defendant not to seek her own acquittal at the expense of a co-defendant.

954

"I think this is a very simple case; that is whether or not you believe the witnesses that have been offered by the Government. If you do, there is certainly ample evidence to establish beyond a reasonable doubt the guilt of each one of these defendants. If you do not, then, of course, you should acquit them. In connection with the testimony offered by the Government, certainly there is nothing in this record that would show any reason why there would be any attempt to frame these defendants. What motive would inspire these government witnesses to come in here and testify to what was done here other than unless they were telling what they actually did and what they saw? But you are the ones to pass on that. If you accept the testimony of these three defendants, that they know nothing about it, you should acquit them. If you accept the Government's witnesses you should convict each one of them on each count. * * *

" * * * You consider their (the defendants') testimony the same except that you will bear in mind and consider—you are the ones that determine whether to give it any weight— you consider the interest each of these defendants have in this case and whether or not that motivates any of the testimony they give. That is up to you. You may consider their interest in determining what credibility will be given to their testimony.

* * * * * *

" * * * As I said, it all boils down to which of these witnesses you believe and if you accept the testimony of the Government there is ample testimony to meet the requirement of the law so far as the conspiracy is concerned. * * * As I said, there is no element of any of these offenses that has not been established, if you accept the testimony of the Government's witnesses. * * *

* * * * * *

" * * * If you accept—these discrepancies, of course you consider and weigh those but it fundamentally gets down to whether or not, even though there may be some discrepancy as to certain facts, if you believe the testimony offered by the Government, that these phone calls were made and that this heroin was sold to this Government witness, the rest of that is immaterial but you must decide that, whether or not you believe the Government's witness. You should convict them if you do and if you accept the testimony of the defendants you should acquit them. * * * *"

The effect of these repeated instructions of the court was that the jury's verdict should be based entirely upon whether the jurors believed the testimony of the defendants or the testimony of the Government witnesses. Under such instructions, the outcome was almost inevitable. Further, the court's instructions in practical effect, if not explicitly, precluded the jury from finding Bertha Garza not guilty because she may have been an innocent dupe of Lopez in his sale of heroin to Brown. The jurors may well have entertained a reasonable doubt on that score consistent with their full acceptance of the truth of the Government witnesses' testimony and their belief that the testimony of the defendants, including Bertha Garza, was utterly false. The district court erred in so charging the jury as, in practical effect, to exclude a verdict of not guilty based upon such a theory.

The district court erred further when it charged the jury:

" * * * In that connection if the Government establishes beyond a reasonable doubt in your mind any one of these overt acts as set out here, then it is sufficient to find each of these defendants guilty of this conspiracy. As I told you a moment ago, if you do accept the testimony of the Government witnesses in this case, of Bertha Garza talking to the Agent and stating where Chavez Lopez could be contacted or telling him to go to this room, if she did it, Room 39 there I believe it was, of the Walker Hotel,

that is sufficient an act in itself to cause her to be guilty of the conspiracy under this indictment. * * * "

True, as the Government urges, in another part of its charge the court fully and correctly charged the jury that

" * * * The commission of an overt act is not sufficient to constitute conspiracy. Such an act must be done in pursuance of and in the furtherance of the conspiracy. You must know what they are doing; what the purpose is. For example, if the call was made to Bertha to pass on to Lopez or Bertha passed on, knowing the purpose, then, of course, that would be an act of the conspiracy. Before any person can be held to have been a member of a conspiracy it must be established that a conspiracy was formed and that the person willfully participated in the unlawful plan with the intent to advance or further the object or purpose of the conspiracy. * * * "

We agree with the Government that the charge should be construed as a whole. Indeed, the judge so charged the jury. "You will not single out any one instruction alone as stating the law but must consider the instructions as a whole."

In this case, however, the earlier instruction was not merely misleading, it was positively erroneous—in effect that the telephone conversation is "sufficient an act in itself to cause her to be guilty of the conspiracy under this indictment."

Bertha Garza's objections clearly and explicitly pointed out the court's error but the court made no correction.

The law was well stated by Judge Hutcheson in Perez v. United States, 5 Cir. 1961, 297 F.2d 12, 16:

"It is also fundamental to our jurisprudence that instructions to the jury must be consistent with each other, and not misleading to the jurors. Smith v. United States, 230 F.2d 935 (6th Cir. 1956). The fact that one instruction is correct does not cure the error in giving another that is incon-

sistent with it. Smith v. United States, supra."

Followed in Mann v. United States, 5 Cir. 1963, 319 F.2d 404, 410, and in Henderson v. United States, 5 Cir. 1970, 425 F.2d 134, n. 16.

The other alleged errors in the court's instructions to the jury need not be considered. The judgment must be reversed and the cause remanded for the errors which have been discussed.

Reversed and remanded.