UNITED STATES of America, Plaintiff-Appellee,

v.

Richard Norman DOPF and Theodore Sekulic, Defendants-Appellants.

No. 29112.

United States Court of Appeals, Fifth Circuit.

Nov. 30, 1970.

Rehearing Denied and Rehearing En Banc Denied Jan. 15, 1971.

Alejandro Duran, Jr., El Paso, Tex. (Court-appointed) for defendants-appellants.

Seagal V. Wheatley, U. S. Atty., Haskell Shelton, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants Dopf and Sekulic appeal from their convictions under the Dyer Act, 18 U.S.C. § 2312, and raise various issues, two of which we find significant. They contend that the Court erred (1) in denying their motion to suppress cer-tain oral inculpatory statements made by them to a Special Agent of the F.B.I., and (2) in improperly instructing the jury. Timely objections were made in both instances. We affirm the Court on the first issue. However, because the Court's instructions taken as a whole were improper and tantamount to directing a verdict of guilt, we reverse and remand for a new trial.

Appellants were charged and convicted of transporting a stolen 1967 Ford Station Wagon from El Paso, Texas, into Mexico. Neither defendant testified and no testimony was offered in their defense. Government witnesses testified that the vehicle was stolen in El Paso, Texas, on July 8 or 9, 1969, and that on July 9 appellants offered to sell the vehicle, which they said they stole in Dallas, Texas, to the manager of a bar, the Posada de Indio, at Juarez, Mexico. The bar manager looked at the car, then telephoned the information to a friend who said he would "call the police from the other side." F.B.I. Agent Ellison received the call at El Paso, Texas. He was told that two Americans in Juarez were offering for sale at a very cheap price a late model Ford Station Wagon, identified by license number, and believed to be stolen. Agent Ellison investigated and received confirmation that the identified car had been reported stolen to the El Paso Police Department. He proceeded to Juarez, observed that the vehicle was identical to the one reported stolen, and contacted the federal Police Department of Juarez. Appellants were apprehended and taken into custody by the Juarez police.

Agent Ellison thereafter talked to each of the defendants separately. He advised them of his identity, showed them his credentials, and explained that he was working in a liaison capacity with the Mexican officials. He further told them that they were in custody of the Mexican officials and that he had no jurisdiction in Mexico, but since they were Americans the Mexican Government would probably prefer to have them processed in the United States. He explained

that anything they said could be used against them when and if they were returned to the United States; that he could not furnish them with a lawyer in Mexico but offered to contact the American Consul on their behalf. Both appellants related to Agent Ellison substantially the same story of taking the car in El Paso after finding it in a garage driveway where they had sought refuge from the rain, and driving it into Juarez, Mexico, where they subsequently sold its spare tire and jack at the Posada de Indio. Appellants were later returned by the Mexican officials to the United States. Agent Ellison again interviewed them at the El Paso County Jail on July 25, 1969, after fully advising them of their constitutional rights. Appellants signed waivers but refused to sign statements, expressing their desire to confer with counsel. However, they individually and collectively admitted to Agent Ellison their equal responsibility in the matter.

■ We agree with the District Court that the oral incriminating statements made in Juarez, despite the absence of written waivers, were admissible. The waivers were not obtained because, as Agent Ellison explained to the Court, "The waiver of rights form that we use specifies that they will be furnished with an attorney, that we will provide them with an attorney, that it makes no provision for the circumstances we found ourselves in Mexico of having no authority and not being able to assist them in any other way than to advise the Consulate." The District Court correctly concluded that a waiver would have had no application in Juarez as appellants were not in custody of the United States. Agent Ellison, nevertheless, did everything that he reasonably could have done to protect the rights of appellants by advising them of their right to remain silent, of the possible use against them of incriminatory statements, of the reason why they could not be furnished counsel by the U. S. Government while they were in Mexico and of the availability of the American Consul for their assistance. Despite the advice, appellants freely and voluntarily admitted taking the stolen vehicle across the border. Nothing in the record is to the contrary. Under these circumstances, we find no deprivation of Fifth Amendment rights.

■ Nevertheless, we remand, as the instructions to the jury at the conclusion of the trial exceeded the bounds of fair comment. The District Judge charged:

*"Now in this case the evidence is overwhelming,* if you believe the testimony of the Government, *and frankly there is nothing—nothing to show why a man like Ellison would come in here and fabricate any testimony. There is no basis in the world to argue that that man would be here telling you something that wasn't true* and under the evidence that the Government has offered, if you find—you are the exclusive judges of the credibility and the weight to be given to it, but if you accept the testimony of Mr. Ellison and these others, *certainly there is ample evidence to find these defendants guilty of the offense of which they are charged. Every element has been proved,* if you accept the testimony offered by the Government in this case. The law under which they stand charged is Section 2312 of Title 18. That is whoever transports in interstate commerce, a motor vehicle knowing the same to have been stolen—*and certainly the evidence is overwhelming,* if you accept the testimony of the Government that the car was over here and taken over there and it was a stolen car—now you are the ones that have to pass on that, and if you don't accept the testimony of Mr. Ellison and these other witnesses as to the ownership of the car and the statements given—*certainly there is no evidence here whatsoever but these concessions weren't voluntarily made and they are certainly all supported by the other evidence offered here.* If you accept the evidence offered by the Government *it is ample to convict them."* (Emphasis supplied.)

The constant and emphatic repetition by the Court that the evidence of guilt was overwhelming and ample for conviction, effectively deprived the jury of their traditional fact-finding function and the defendants of their right to trial by jury. Not only did the District Judge emphasize the guilt of defendants, he invaded the right of the jury to assess credibility by asserting and reasserting that there was no basis on which they could disbelieve the testimony offered[1] —and the only evidence presented was that of the Government.

The fact that the jury was told that they were the exclusive judges of the credibility of the witnesses did not cure the prejudicial effect of the charge. Quercia v. United States, 289 U.S. 466, 472, 53 S.Ct. 698, 700, 77 L.Ed. 1321 (1933); Hardy v. United States, 1964, 118 U.S.App.D.C. 253, 335 F.2d 288, 290. In United States v. Murdock, 290 U.S. 389, 393, 394, 54 S.Ct. 223, 225, 78 L. Ed. 381 (1933), the Supreme Court affirmed an appellate court's reversal of conviction in which the following jury instruction had not, in the Court's opinion, fairly left to the jury the decision on issues of fact:

"So far as the facts are concerned in this case, Gentlemen of the Jury, I want to instruct you that whatever the Court may say as to the facts, is only the Court's view. You are at liberty to entirely disregard it. The Court feels from the evidence in this case, that the Government has sustained the burden cast upon it by the law and has proved that this defendant is guilty in manner and form as charged beyond a reasonable doubt."

We are mindful, of course, that in evaluating a trial judge's instructions we must not isolate statements which may in themselves appear to be prejudicial, but must look to the charge as a whole. Tillman v. United States, 5 Cir., 1969, 406 F.2d 930, 940; Gurleski v. United States, 5 Cir., 1968, 405 F.2d 253, 268. A review of the totality of the charge here convinces us that prejudicial and reversible error was committed, and that the verdict was not fairly left to the jury to decide. We recently reversed and remanded a judgment of conviction in United States v. Garza, 5 Cir., 1970, 426 F.2d 949, in which an instruction very similar to the present one was given.[2] We noted in Garza that although the District Judge was careful to charge the jury that they were the exclusive judges

---

1. The case is distinguishable from United States v. Blue, 5 Cir., 1970, 430 F.2d 1286, relied on by the Government, in which the District Judge expressed no opinion as to the credibility of the witnesses and the Judge did not insist, as here, that the jury find the defendant guilty.

2. In the Garza case the District Judge commented, in part, as follows:

"I think this is a very simple case; that is whether or not you believe the witnesses that have been offered by the Government. If you do, there is certainly ample evidence to establish beyond a reasonable doubt the guilt of each one of these defendants. If you do not, then, of course, you should acquit them. In connection with the testimony offered by the Government, certainly there is nothing in this record that would show any reason why there would be any attempt to frame these defendants. What motive would inspire these government witnesses to come in here and testify to what was done here other than unless they were telling what they actually did and what they saw? But you are the ones to pass on that. If you accept the testimony of these three defendants, that they know nothing about it, you should acquit them. If you accept the Government's witnesses you should convict each one of them on each count. * * * You consider their (the defendants') testimony the same except that you will bear in mind and consider—you are the ones that determine whether to give it any weight— you consider the interest each of these defendants have in this case and whether or not that motivates any of the testimony they give. That is up to you. You may consider their interest in determining what credibility will be given to their testimony. * * * As I said, it all boils down to which of these witnesses you believe and if you accept the testimony of the Government there is ample testimony to meet the requirement of the law so far as the conspiracy is concerned. * * * As I said, there is no element of any of these of-

of the facts, he "left the jury in no doubt as to his views." 426 F.2d at 953.

The trial judge has, of course, the right to analyze and comment on the evidence and to direct and assist the jury whenever he considers it necessary in reaching a just result. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); Kyle v. United States, 5 Cir., 1968, 402 F.2d 443. His role is not limited to that of moderator or umpire. Nor is he a "mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done." Rudd v. United States, 8 Cir., 1909, 173 F. 912, 914; National Dairy Products Corporation v. United States, 8 Cir., 1965, 350 F.2d 321, 333. "[He] is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." But this privilege to "comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling'."

Quercia v. United States, 289 U.S. at 469, 470, 53 S.Ct. at 698, 699, 77 L.Ed. 1321.

By our decision here we have no intention of eroding the recognized rights of a district judge in instructions to the jury and comments on the evidence, but there are limitations to these rights and the District Court clearly exceeded these limitations.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing on behalf of appellants is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

fenses that has not been established, if you accept the testimony of the Government's witnesses. * * * If you accept—these discrepancies, of course you consider and weigh those but it fundamentally gets down to whether or not, even though there may be some discrepancy as to certain facts, if you believe the testimony offered by the Government, that these phone calls were made and that this heroin was sold to this Government witness, the rest of that is immaterial but you must decide that, whether or not you believe the Gov-

ernment's witness. You should convict them if you do and if you accept the testimony of the defendants you should acquit them."

In reviewing those instructions, we said: "The effect of these repeated instructions of the court was that the jury's verdict should be based entirely upon whether the jurors believed the testimony of the defendants or the testimony of the Government witnesses. Under such instructions, the outcome was almost inevitable."

426 F.2d at 954.