IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 4, 2008

Charles R. Fulbruge III
Clerk

No. 06-41471

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ROBERT EARL EDWARDS

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
No. 5:01-CR-1174-6

Before KING, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Robert Earl Edwards, federal prisoner # 30222-039, filed a motion pursuant to 28 U.S.C. § 2255 to vacate his 2003 conviction for conspiracy to possess with intent to distribute in excess of 1000 kilograms of marijuana, two counts of possession with intent to distribute in excess of 100 kilograms of marijuana, and conspiracy to commit money laundering. The district court denied his motion, and we granted him a certificate of appealabilty

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("COA"). Having considered the grounds on which the COA issued, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Edwards was charged, along with fifteen codefendants, in a superceding indictment which included thirteen counts overall. He was convicted by a jury on September 19, 2002, after a nine-day trial, of conspiracy to possess with intent to distribute in excess of 1000 kilograms of marijuana in violation of 21 U.S.C. § 841, two counts of aiding and abetting possession with intent to distribute in excess of 100 kilograms of marijuana in violation of 18 U.S.C. § 2, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Edwards stood trial with two co-defendants whose convictions are not here at issue.

Edwards was sentenced to 192 months of imprisonment on each count to run concurrently, followed by concurrent five-year and three-year terms of supervised release. Edwards was also ordered to pay a mandatory assessment of $400. His conviction was affirmed on direct appeal on August 16, 2004, in United States v. Giddings, 107 Fed. Appx. 420, 423 (5th Cir. 2004), where we concluded that "[e]vidence at trial clearly connected Edwards to the Oziel Garcia drug ring." That evidence included "numerous taped conversations [between the informant] and Edwards discuss[ing] the transportation of marijuana," phone conversations between Edwards and Garcia and his associates, money transfers between Edwards and Garcia and his associates, and proof that drivers employed by Edwards had loads of marijuana seized from their trucks by the authorities. Id. at 423-24.

Edwards filed a petition for a writ of certiorari to the Supreme Court, and on February 28, 2005, the Court vacated the judgment and remanded for further consideration in view of United States v. Booker, 543 U.S. 220 (2005). Edwards v. United States, 543 U.S. 1181 (2005). On May 31, 2005, this court affirmed Edwards's sentence on remand because he had not shown that the district court

would have imposed a lesser sentence had the Guidelines been advisory. United States v. Edwards, 132 Fed. Appx. 535, 536-37 (5th Cir. 2005).

On June 26, 2006, Edwards filed a 28 U.S.C. § 2255 motion to vacate the judgment, arguing that: (1) the district court gave jury instructions in which it improperly commented on the evidence; (2) his sentence was based on "extra-verdict" enhancements in violation of Booker; and (3) his attorney provided ineffective assistance of counsel by failing to object to the district court's improper jury instructions, failing to preserve his objections to his sentence based on Booker, failing to argue that the sentences should have been individualized for each conviction, and failing to argue on appeal that, after Booker, the district court was not authorized to make a drug quantity finding. On July 17, 2006, the district court issued a memorandum opinion and final judgment denying Edwards's § 2255 motion on the merits and denying him a COA.

Subsequently, on June 14, 2007, this court granted Edwards a COA on "whether the district court erred in denying his claim that the trial court improperly commented on the evidence during the jury instructions and his trial counsel was ineffective in failing to object to these comments."[1] We set forth the challenged jury instructions at length in the course of our discussion.

---

[1] We decline to address Edwards's argument, raised for the first time in his reply brief to this court, that the district court should have admitted certain evidence concerning other individuals listed in the superceding indictment. See United States v. Fields, 483 F.3d 313, 352 n.36 (5th Cir. 2007) (stating that arguments raised for the first time in a reply brief are abandoned). Even if the argument had been raised in Edwards's opening brief, the issue exceeds the scope of the COA issued by this court, which is the limit of our review. See United States v. White, 307 F.3d 336, 339 n.1 (5th Cir. 2002) (citing Lackey v. Johnson, 116 F.3d 149, 151 (5th Cir. 1997)).

## II. DISCUSSION

### A. Standard of Review

When reviewing the denial of habeas relief, the district court's findings of fact are reviewed for clear error and issues of law are reviewed de novo. United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994).

### B. The Trial Court's Remarks

Edwards argues that he was denied a fair trial because the district court improperly commented on the evidence and, thereby, bolstered the government's case during jury instructions. Moreover, Edwards contends that his attorney provided ineffective assistance of counsel by failing to object to the instructions. In particular, Edwards argues that the district court erred by stating that he believed that certain elements of the offenses were not in serious dispute. Further, Edwards asserts that the district court's statement that there was a conspiracy "to move marijuana from Laredo up north" prejudiced him, as he was the only defendant who lived in Detroit, Michigan.

Edwards's challenges require us to explore the role of the federal trial court judge and determine whether, on the specific facts of this case, the district court's instructions to the jury fit within the scope of its proper role. Chief Justice Hughes set out, in a unanimous opinion, Quercia v. United States, 289 U.S. 466 (1933), what has since been characterized as "the classic statement" of the common law powers of the federal trial judge. United States v. Cisneros, 491 F.2d 1068, 1072-73 (5th Cir. 1974). The Chief Justice explained:

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. [(Citation omitted).] In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important;

4

and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. [(Citations omitted).] Sir Matthew Hale thus described the function of the trial judge at common law: "Herein he is able, in matters of law emerging upon the evidence, to direct them; and also, in matters of fact to give them a great light and assistance by his weighing the evidence before them, and observing where the question and knot of the business lies, and by showing them his opinion even in matters of fact; which is a great advantage and light to laymen." Hale, History of the Common Law, 291, 202. Under the Federal Constitution the essential prerogatives of the trial judge are maintained in the federal courts. [(Citations omitted).]

Quercia, 289 U.S. at 469-70.

While these judicial powers cannot be questioned, they are not unfettered. The Chief Justice cautioned:

This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses . . . . This Court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence "should be so given as not to mislead, and especially that it should not be one-sided . . . ." [(Citations omitted).]

Id. at 470.

In Quercia, the Court held that the trial court judge "did not analyze the evidence," but rather, "he added to it" by telling the jury during his instructions "that 'wiping' one's hands while testifying was 'almost always an indication of lying.'" Id. at 471-72. The trial court judge followed that with, "I think that

every single word [the defendant] said, except when he agreed with the Government's testimony, was a lie." Id. at 468. The Court concluded that this was prejudicial error because the trial court judge "did not review the evidence to assist the jury in reaching the truth, but in a sweeping denunciation repudiated as a lie all that the accused had said in his own behalf . . . ." Id. The Court so held notwithstanding the presence of a curative instruction in which the trial judge stated "that his opinion of the evidence was not binding on the jury and that if they did not agree with it they should find the defendant not guilty." Id. at 472. The Court reasoned that the curative instruction could not erase the trial judge's "characterization of the manner and testimony of the accused" which was "likely to . . . excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." Id.

Similarly, we have consistently said that to "be constitutional error, the trial judge's statements, viewed as a whole, must have amounted to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the function of judge and prosecutor." United States v. Munoz, 150 F.3d 401, 413-14 (5th Cir. 1998) (citation omitted). "In determining whether the trial judge overstepped the limits imposed on the judge's conduct, this [c]ourt must view the proceedings as a whole." United States v. Carpenter, 776 F.2d 1291, 1294 (5th Cir. 1985). And, "[m]oreover, we have previously stated that even a comment arguably suggesting a judge's opinion concerning guilt is not necessarily reversible error but must be reviewed under the totality of the circumstances, considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions. United States v. Lance, 853 F.2d 1177, 1182 (5th Cir. 1988). In essence, a "trial court has wide latitude in commenting on the evidence during his instructions to the jury, but he has not power to direct a verdict of guilty," or take from the jury the issue of the defendant's guilt. United States v. Skinner, 437 F.2d 164, 165 (5th Cir. 1971) (quoting Mims v. United States, 375 F.2d 135, 148 (5th Cir. 1967)); see

United States v. Dopf, 434 F.2d 205, 208-09 (5th Cir. 1970); United States v. Inocencio, 40 F.3d 716, 729 (5th Cir. 1994).

Turning to the challenged statements at issue in this case, Edwards is a pro se litigant, and we construe his briefs liberally, see United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994), as contesting the following comments by the district court while instructing the jury with respect to the existence of an ongoing conspiracy, the element of "intent to distribute," and the amount of marijuana at issue in the case. However, as demonstrated by placing the challenged comments in their proper context, Edwards has not necessarily presented them as we are instructed to view them, in light of the record as a whole. See United States v. Hefferon, 314 F.3d 211, 221 (5th Cir. 2002). After a nine-day trial and in the course of detailed instructions that span over one hundred transcribed pages, provided on two separate occasions because the jury requested clarification on possession with intent to distribute, the district court instructed as follows:[2]

> So what the [g]overnment is charging here in Count 1 is that, over a period of time—and here it says May 1 of '98 to December of '01. You don't necessarily have to find that it's all of those dates. But for this purpose, let's say that it was at least—according to the evidence that we've heard in this case, it's at least sometime in the mid or early 1999 up to at least sometime later on in 2000. But that over a period of time, that's the only important thing, that over a period of time there was this ongoing conspiracy to possess quantities of marijuana with the intent to distribute them.
> And I think it's—it's probably fair to say—I mean, I have the right to comment on the evidence. I generally try not to, but I . . . think it's not radical to say that, as one of the arguments said, I don't think it's any real doubt that . . . there was some kind of

---

[2] The district court's instructions are set forth at some length in an attempt to put them in their proper context. The portions challenged by Edwards are italicized for ease of identification.

conspiracy going on over a period of time between a lot of people to move marijuana from Laredo up North. But . . . you do have to be satisfied about that.

You have to be satisfied that . . . there was an ongoing plan—a conspiracy is simply an ongoing plan between at least two people, because you cannot conspire by yourself. There has to be at least two people who get together and agree that they are going to do something illegal. And under the law, it's the agreement itself that's a crime.

(Tr. vol. 11:1486-87.)

Edwards also challenges the following conspiracy instruction, which appears four pages later in the transcribed proceedings:

So the [g]overnment doesn't have to prove that there was a formal meeting or that there was a detailed contract or even exactly how all the scheme was involved. Although, in this case, forgetting the defendants for a minute, in this case, in this case, the—the overlay of what the scheme is, came out with some clarity. It's gathering stuff here in warehouses and putting it in trucks and taking it up north and that sort of thing.

So you—as I say, even leaving out these three defendants for a moment, there's some indication of what the scheme is about.

(Tr. vol. 11:1490.)

On the issue of intent to distribute, Edwards challenges the following:

So . . . the elements are that you knowingly possessed a controlled substance. That substance is, in fact, marijuana. And that you had the intent to deliver it or pass it on to somebody else. And that it was at least 100 kilos.

Now, as I say, intent to distribute simply means that you had the intent to pass it on. And you could—there, you can consider, first of all, the sheer volume of it. And the value of it. That's why we allow evidence of value. And the way that it is wrapped and packaged. I mean, in both of these instances, it was found in tractor-trailers that were

8

apparently—intended to hit the road and go somewhere else. So I don't think there's much of a serious dispute that whoever is liable for those counts, and we'll get to that in a minute, and ultimately that's your decision, but—but whoever is liable for the marijuana on those two occasions was intending to distribute it.

The key thing as to, of course, both of these defendants is did they—did they actually have anything to do with it.

(Tr. vol.11:1477-78.)

Again on the issue of intent to distribute, Edwards challenges one sentence of the district court's following iteration of what the jury could find, not with respect to him, but with respect to one of his codefendants:

> And the [g]overnment has to prove to you beyond a reasonable doubt, by either direct or circumstantial evidence that [one of Edwards's codefendants, Giddings] knew [the marijuana] was there. If he knew it was there, then . . . that would be a case where you could find, and I'm not telling you what to find, but you could find he was in constructive possession because he was driving the rig alone. He was the operator of . . . the thing. And then you could look at the fact that it was going on a tractor-trailer up the highway, and the . . . value and the volume of it, that there was some—that there was obviously an intent to distribute to somebody.
>
> And, indeed you could—and I'm not even sure there's a contested issue on any of these cases. The—obviously moving marijuana on trucks from south to north of the country is an intent to distribute it to somebody. And so that's what the statute is talking about, intent to distribute.
>
> [A]s to Giddings, for example, that's a fairly distinct discussion, because the issue there—you have to be satisfied it's marijuana and you have to be satisfied it's more than 100 kilos and you have to be satisfied that it was in the back of the vehicle and it was intended to be distributed. But the issue there is—the critical issue there is . . . did he know it was there. Did he even know it was there at all. He says he

did not. And, therefore, of course . . . you are not liable for possessing marijuana if you don't know it, because then you don't know it. And so you're not knowingly possessing it.

(Tr. vol. 12:1551-52.)

In reference to the quantity of marijuana required under the statute for conviction of possession with the intent to distribute, Edwards challenges the following instruction explaining what the government must prove:

So, first of all, I will tell you that marijuana is a controlled substance. And that's not a subject to debate.

But the elements of that crime, and this would apply to Counts 3 and 5, are that a defendant was in possession of a controlled substance and that . . . he knew it. That he knew that he was possessing a controlled substance. And that he had the intent to distribute it, which means simply that it was not for his personal use, but rather he had the intent to deliver it to someone. Maybe for money, maybe not for money. That's not important.

And then, finally, that it involved—at least in Count 3 and Count 5, both, is that it involved at least 100 kilos of marijuana. For your information, 100 kilos is roughly 220 pounds. So I think one of these—I don't think there's any doubt about the amount, but I think one of these was 400 and some odd pounds. And I think one of them was even—according to the evidence, even more than that. But you have to be satisfied that both of these were at least 100 kilos, which is at least . . . 220 pounds. So that's . . . what Counts 3 and 5 are.

(Tr. vol. 11:1476-77.)

In explaining the theory that the defendants could be found guilty of possession with the intent to distribute based on their participation in the conspiracy, if the jury so concluded, the district court instructed them on the following, which Edwards challenges out of context:

The next theory is that if people are members of a conspiracy, if you have found . . . that they are

already part of a scheme to move marijuana through . . . whatever, through telephone conversations, through whatever other circumstances you're looking at, if you find that they are members of a plan, a conspiracy, an agreement, to possess marijuana with the intent to distribute it, then if any of the conspirators carries out the plan, they're all liable.

And that's the other instruction I gave you. That . . . if Edwards for example, is a member—the government's theory is that in the conversations back and forth with [the informant Vasquez] and talking . . . and three-way phone calls and all that, that he was, in fact knowing about it and sending drivers down and was in on the plan from the beginning. If that's true and if the [g]overnment has satisfied you of that beyond a reasonable doubt, then he was part of a conspiracy, he was part of a plan, a scheme to do this. And then if anyone does it, whether it's [codefendant] Giddings or . . . Tim Davis [another potential coconspirator] or anybody else does it to carry out the plan, then all the conspirators are liable possession with intent to distribute. Even if they never touched it, even if they're not even in town, they're all liable. Why? Because the plan of which they were a part has been carried out.

(Tr. vol. 12:1553.)

Finally, in summing up the evidence and various theories of the case for the jury toward the end of the second round of instructions, the district court explained the following, which Edwards challenges:

So, the dispute, as I understand it, and you're not bound by this, but it is not so much what was factually going on. It's a matter of what was in the people's minds. That's where the—it seems to me the whole argument about this case has been.

Were these people who were truck drivers, who were doing trucking business, normal freight transactions, or at least thought they were, or were they knowingly participating in marijuana transactions? . . . But you have to wade through these different levels of are they members of a conspiracy, what is their knowledge, are they knowingly & willfully

11

> participating in illegal activity. And all of that is what you have to be satisfied beyond a reasonable doubt ast to each—each defendant. And it's . . . the government's burden to prove that.

(Tr. vol. 12:1561-62.)

After reviewing these comments in the context of the whole record, as we are required to do, see Hefferon, 314 F.3d at 221, we conclude that the district court's comments in this case fall within the ambit of conduct condoned by Chief Justice Hughes in Quercia when he declared:

> It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination.

289 U.S. at 469. When put in their proper context, the district court's statements in this case fall short of being "quantitatively and qualitatively substantial," United States v. Lankford, 196 F.3d 563, 572 (5th Cir. 1999), as required to pose any threat to the fairness of Edwards's trial.

In the past, we have held that a district court committed reversible error when, in the course of instructing the jury, he essentially directed a guilty verdict by making repeated comments such as, "Now in this case the evidence is overwhelming," and, "if you accept the testimony [presented by the government], certainly there is ample evidence to find these defendants guilty of the offense of which they are charged. Every element has been proved, if you accept the testimony offered by the [government] . . . ." Dopf, 434 F.2d at 207-08.

Similarly, in Cisneros, we held that a district court committed reversible error when "he came very close to behaving for an instant like an actual witness for the prosecution," when he implied in the jury instructions that the defendant

and a key defense witness had planned to fabricate exculpatory testimony. 491 F.2d at 1075-76. The district court there commented, "Now, members of the jury, I often do not comment upon evidence presented but the rules of law in [f]ederal [c]ourt permit some comments, and I am expressing no opinion, but I am saying to you very frankly that my opinion, that somebody is lying in this case." Id. at 1072. The district court then further commented on the demeanor of the witness as he stepped off the witness stand, suggesting impropriety, an aspect of the trial that the prosecution failed to highlight. Id.

The district court's comments in this case do not fall withing the ambit of these cases. Rather, we conclude that the facts of this case are more analogous to those in Inocencio, 40 F.3d 716. There, the defendant challenged the jury instructions on the grounds that the district court improperly directed a verdict on whether the substance at issue in the case was in fact cocaine, and that the district court prejudiced the defendant by commenting on the testimony adduced at trial on the element of intent to distribute as well as in defining the elements of conspiracy. Id. at 729-31. While Edwards properly points out that the parties in Inocencio had stipulated to cocaine, id. at 729, whereas in the case before us, there was no such stipulation, that distinction does not end our analysis.

The challenged instructions in Inocencio were similar to those presently before us. There, with respect to the instruction on intent to distribute, the district court instructed the jury:

> [T]o the extent that you believe [the testimony of a prosecution witness who stated that he intended to distribute the cocaine], and I don't—at least I don't think anybody's challenging him on that part. I mean, whoever else was involved, he says that when the truck arrived . . ., he himself was going to take it and distribute it . . . . Well, that's exactly what intent to distribute means. That the purpose of having that cocaine in somebody's possession was to distribute it to other people. So [the witness] says, if you accept his testimony . . . ."

13

Id. at 729-30 (emphasis in original).  We found no error in these instructions. We explained that "a judge may comment on the evidence to facilitate the jurors' task of reaching a proper verdict so long as the judge advises them that they are not bound by his comments."  Id. at 730.  More specifically, we held that the "remarks . . . simply reflected the evidence in the record.  The judge did not instruct the jury to take [the witness's] testimony as true, he merely suggested that they could believe or disbelieve the testimony in considering whether there was intent to distribute."  Id.

The defendant in Inocencio also challenged the district court's instructions defining the elements of conspiracy.  Id.  Specifically, the district court had instructed:

> Because a conspiracy is simply an agreement, . . . and let[']s forget for a minute who all is involved.  But the type that [the government witness] is describing, an agreement to get a truck, arrange for a driver, meet and move the truck from one  spot to another spot and deliver the cocaine and so forth.  That would be a conspiracy.  That would be a classic agreement situation where a group of people have reached an understanding that they're going to do something illegal.  They're going to get possession of cocaine with the intention of distributing it to other people.  So that would be a classic conspiracy to possess cocaine with intent to distribute it.
>
> So nobody here is arguing, as I get it, that there was not that kind of conspiracy going on.  I think everybody joins in and says, yeah, there probably was that kind of conspiracy going on.  It's a big amount, it's a big load, it's a valuable load.  It was in the truck and there were people in a hotel and it was going other places and so forth.  So there is probably a conspiracy on.

Id.

Like Edwards, the defendant in Inocencio argued that this instruction "relieved the government of its burden of proving that a conspiracy occurred between [the challenging defendant] and the other defendants," and the

14

defendant contended that the district court exhibited bias toward the prosecution "by accepting that there was 'probably a conspiracy going on.'" Id. We rejected the defendant's arguments. We explained that in "the first paragraph of the instruction, the district court merely described an agreement in terms of the facts before the jury. The judge never instructed the jury that the evidence showed that the defendants were involved in a conspiracy." Id. (emphasis added). Further, we noted that the district court concluded its instruction with a reminder "that the government had to prove beyond a reasonable doubt that each of the defendants was intentionally involved in the criminal plan," and that immediately before giving the instruction, the district court impressed upon the jury that the ultimate question—who was involved in the conspiracy—was for the jury to determine. Id.

As to the second paragraph of the conspiracy charge, stating that no one really challenged the existence of a conspiracy and that a conspiracy "probably" was going on, we held that "the district court's remarks again reflected the evidence in the record. The court simply referred to the same evidence that [the defendant's attorney] relied on in his own closing argument," acknowledging the existence of a conspiracy, but maintaining that the government had not proven that his client was involved. Id. at 731. Consequently, we affirmed the judgment of the district court.

We conclude now that our reasoning in Inocencio applies with equal force to the comments challenged in this case. First, Edwards challenges the district court's comments that: he didn't "think [there is] any real doubt that . . . there was some kind of conspiracy going on over a period of time between a lot of people to move marijuana from Laredo up North," and that "in this case, the . . . overlay of what the scheme is, came out with some clarity. It's gathering stuff here in warehouses and putting it in trucks and taking it up north and that sort of thing." This instruction, like that in Inocencio, simply reflected the evidence in the record, evidence that defense counsel himself referred to in his closing

15

argument.[3]   Also, as we stated in Inocencio, the district court here never instructed the jury that the evidence showed that Edwards was involved in any conspiracy.  Thus, Edwards's challenge to this instruction lacks merit.

Second, Edwards challenges the district court's comment that he "didn't think there's much of a serious dispute that . . . whoever is liable for the marijuana on these two occasions was intending to distribute it" because "it was found in tractor-trailers that were apparently—intended to hit the road and go somewhere."  Again,  this comment just reflected the evidence in the record. Furthermore, in the same breath, the district court told the jury, with respect to determining who was responsible for the marijuana, "ultimately, that's your decision."  Thus, as was the case in Inocencio, the district court merely pointed out that there did not seem to be much of a dispute that the evidence belied an intent to distribute, but that ultimately the decision of who intended to distribute rested within the province of the jury.

Third, Edwards challenges the district court's comment that "there was obviously an intent to distribute to somebody."  When put in its proper context, this statement amounted to nothing more than the district court instructing the jury on what they could conclude under the law in the context of the facts of the case.  To begin, this specific instruction did not even apply to Edwards.  It expressly referenced his codefendant, Giddings.  But even assuming arguendo that the jury could transfer its implication to Edwards, the district court first instructed the jury that the government had to prove that Giddings knew the marijuana was in the truck.  The district court then told the jury that it "could look to the fact that it was going on a tractor-trailer up the highway, and [at] the . . . value and the volume of it" to determine that there was an intent to

---

[3] In his closing argument, Edwards's attorney argued that at least two others accused by the government were working with the informant to sneak their marijuana onto Edwards's trucks and "send it to their contacts in Detroit without anybody knowing about it . . . . That's what's happening here."  (Tr. vol. 11:1380.)

distribute. The district court stated the law in terms of the facts of this case, telling the jury what evidence it could use to find an intent to distribute, and relied on facts urged by Edwards's attorney in his closing argument, just like the district court in Inocencio.

Fourth, Edwards challenges the district court's comment regarding the amount of marijuana required under the statute prohibiting possession with intent to distribute. We note that initially, the district court did nothing more than explain that the government must prove that at least 100 kilos of marijuana were involved, and that mathematically, 100 kilos is equivalent to approximately 200 pounds, a unit of measure more familiar to most jurors in the United States. The district court then noted that the evidence adduced at trial showed that one of the seized loads consisted of 400 or more pounds of marijuana, and concluded by reminding the jury that it had to be satisfied that both loads met the statutory threshold. At no point did the district court add to the evidence brought out at trial. See Cisneros, 491 F.2d at 1075-76. Thus, we find no error.

Fifth, Edwards challenges the district court's instruction on the conspiracy theory of possession. The district court informed the jury, "Even if they never touched it, even if they're not even in town, they're all liable. Why? Because the plan of which they were a part has been carried out." Just like the conspiracy instruction in Inocencio, in context, the district court did nothing more than instruct the jury on the law in terms of the facts of this case. The instruction, read as a whole, simply provided the jury with a hypothetical, that if the conspiracy went as described, then every coconspirator would be liable for any coconspirator's possession of marijuana with intent to distribute. As in Inocencio, we find no error in the district court's contextualized hypothetical.

Sixth, Edwards challenges the district court's characterization of the central issue in the case as "the dispute, as I understand it, and you're not bound by this, but it is not so much what was factually going on. It's a matter of what

was in the people's minds. That's where . . . it seems to me the whole argument about this case has been." In his closing argument, Edward's attorney argued to the jury, "Remember, in opening, I told you about my client, the whole thing was knowledge, you know, did he know. And that's what it's all about." Even beyond what we noted in Inocencio where the district court relied on the same evidence that the defense attorney relied on in his closing, here, the district court did nothing if not help defense counsel make his point to the jury by "observing where the question and knot of the business lies . . . ." Quercia, 289 U.S. at 469. Consequently, this instruction could not have prejudiced Edwards.

We also note that like in Inocencio, 40 F.3d at 730-31, the district court in this case gave innumerable curative instructions. In addition to the constant reminders to the jury that it "must be satisfied" that the government proved its case beyond a reasonable doubt, the district court also informed the jury that:

> These legal instructions are binding, but—but nothing—indeed nothing else that I have said is binding on you, except for my rulings. I mean, you have to follow the law as I give it to you. . . . But you should not draw any conclusion at all from whatever I've said about -- about the guilt or innocence of the defendants.
> In other words, you have to follow my legal instructions, but you should not speculate about how I might vote or what I think about the guilt or innocence of any defendant. That's not the point either. So you're not here to worry about what any of us think about the guilt or innocence of a defendant. That's your job as long as you base it on the evidence and you follow these legal instructions.
> So anything -- anything that I've said or done, other than these legal instructions, you should disregard in reaching a verdict.

(Tr. vol. 11:1455-56.)

"Juries are presumed to follow their instructions." Hefferon, 314 F.3d at 222 (citing Zafiro v. United States, 506 U.S. 534, 540-41 (1993); see also United States v. Garcia Abrego, 86 F.3d 394, 401-02 (5th Cir. 1996) (curative instruction

18

to the jury remedied any prejudice arising from the district court's comment on defendants' nationality during voir dire)). While we have held in some cases that curative instructions are insufficient to remove the taint caused by substantially prejudicial trial court comments, see, e.g., Cisneros, 491 F.2d at 1075-76; Dopf, 434 F.2d at 208, as explained above, this is not such a case. Thus, the comments in this case were not sufficiently "quantitatively and qualitatively substantial," Lankford, 196 F.3d at 572, to pose any threat to the fairness of Edwards's trial.

## C. Ineffective Assistance of Counsel

Edwards also contends that his trial counsel was ineffective in not objecting to the allegedly improper comments. "A claim that counsel's performance fell below the threshold for effective assistance is analyzed under the framework that the Supreme Court established in Strickland v. Washington[, 466 U.S. 668 (1984)]." Faubion, 19 F.3d at 228. Consequently, to succeed on his ineffective assistance of counsel claim, Edwards must show that: "(1) [his] attorney's performance was deficient and (2) this deficient performance prejudiced [his] defense." Id. (citing Strickland, 466 U.S. at 678). Even assuming that the performance of his counsel was deficient, Edwards "must demonstrate that [his] counsel's deficient performance so prejudiced [his] defense that the proceeding was fundamentally unfair. This test is the linchpin and requires a showing that, but for counsel's errors, the result would have been different." Faubion, 19 F.3d at 228 (citations omitted).

Edwards cannot meet this standard. First, his trial counsel did not perform deficiently by failing to object to the district court's jury instructions because, as explained, they were not improper. Second, Edwards has not shown that there was a reasonable probability that the outcome of his trial would have been different if the district court had not explained the evidence and theories of the case as he did because there was sufficient evidence from which a reasonable jury could find that Edwards committed the offenses with which he

was charged.  See Giddings, 107 Fed. Appx. at 423.  Accordingly, Edwards has not shown that his trial counsel rendered ineffective assistance. See Strickland 466 U.S. at 694; Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005); Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985).

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.